UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| PRABHAS MOKKAPAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00228 |
| | ) | |
| GREENSCAPE HOMES, LLC, GREENSCAPE | ) | |
| HOMES – KPN LLC, GREENSCAPE REALTY | ) | |
| LLC, KPN REAL ESTATE HOLDINGS LLC, | ) | Honorable John Robert Blakey |
| GREENSCAPE VENTURES, LLC, MKJ | ) | |
| HOLDINGS, LLC, GREENSCAPE VENTURES | ) | |
| L.L.C., KENNETH P. NEUMANN, KEITH R. | ) | |
| NEUMANN, JENNIFER BROST, KATHLEEN | ) | |
| WASHKO, ELIZABETH D. KOZAR, MICHAEL | ) | |
| P. LUSK AND LUSK LAW LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MICHAEL P. LUSK AND LUSK LAW LLC'S MOTION FOR SANCTIONS

NOW COME the Defendants, Michael P. Lusk and Lusk Law LLC (collectively the "Lusk Defendants"), and for their Motion for Sanctions pursuant to Fed. R. Civ. P. 11(b) ("Rule 11") against the Plaintiff, PRABHAS MOKKAPAT, and his counsel, PAUL A. CAGHAN ("Caghan"), state as follows:

## INTRODUCTION

The Lusk Defendants' counsel has warned Plaintiff and Caghan on three (3) occasions regarding their previous false statements that the Lusk Defendants' have not complied with discovery in this matter, which Plaintiff has raised in response to Defendant's Motion to Dismiss on multiple occasions. However, Plaintiff and Caghan continue to erroneously assert that the Lusk Defendants have not answered written discovery, ***despite being served with their discovery responses four (4) times* and *even acknowledging receiving the responses***. Most recently in Plaintiff's misnomered "Reply in Support of Motion for Leave to File Second Amended Complaint" (hereinafter "Response"), Plaintiff and Caghan again asserted the Lusk Defendants'

alleged failure to comply with written discovery as a basis for denying their Motion to Dismiss the Second Amended Complaint. *Id.* at pp. 10-15. Sanctions, pursuant to Rule 11(b), are warranted based on these false representations to this Court.

## BACKGROUND

On or about January 24, 2017, Plaintiff alleges certain non-Lusk Defendants gave him an "appraisal" of the property located at 738 S. Cleveland Avenue, Arlington Heights, Illinois (the "Subject Property") that valued the property at $850,000. Thereafter, Plaintiff entered into a contract with Greenscape Homes, LLC ("Greenscape") to purchase the Subject Property. Plaintiff ultimately failed to secure financing for the purchase and did not proceed with the transaction. Greenscape retained Plaintiff's earnest money and upgrade deposits totaling $84,110.00 as liquidated damages.

Plaintiff filed an initial Complaint setting forth a single count of common law fraud against all Defendants alleging a Ponzi scheme among and between the Defendants to defraud Plaintiff in his failed purchase of the Subject Property in the Circuit Court of Cook County, Illinois. His claim was insufficiently pled and the court dismissed the Complaint, without prejudice. Plaintiff then amended his complaint to assert twelve (12) claims, including fraud, civil RICO violations, breach of contract, breach of fiduciary duty, aiding and abetting, conspiracy, unjust enrichment, and equitable rescission. Defendants removed the matter to this Court. *See* ECF Dkt. No. 1. Both the Lusk Law Defendants and non-Lusk Defendants filed Motions to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF Dkt. Nos. 21, 23 & 27.

2

Plaintiff filed an Amended Complaint on February 26, 2019.[1] *See* ECF Dkt. No. 32. Defendants again moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF Dkt. Nos. 35, 37 & 38. In his Response to the Motions to Dismiss filed on May 10, 2020, Plaintiff asserted that he could not respond until all Defendants, including the Lusk Defendants, answered written discovery and asked the Court to take notice of "adjudicative facts" based on Defendants' alleged failures. *See* ECF Dkt. No. 40 at pp. 1-5. However, the Lusk Defendants noted in their Reply that they had already answered Plaintiff's written discovery on April 29, 2019, and *even attached their Responses as an Exhibit* to the Reply. *See* ECF Dkt. No. 44. In his second Response to the pending Motions to Dismiss, Plaintiff and Caghan repeated the false claim that the Lusk Defendants had failed to answer written discovery despite it being included as part of their Reply filed seven (7) months before. *Compare id. with* ECF Dkt. No. 89 at pp. 12-14.

At the January 30, 2020 hearing, Caghan reiterated Plaintiff's argument that Defendants had failed to answer written discovery. Caghan stated that he needed Greenscape to produce documents for the cost of materials, blueprints, and other construction documents for the Subject Property. Caghan made no mention of any documents needed from the Lusk Defendants. The Court denied Defendants' Motions to Dismiss, and allowed Plaintiff leave to file a proposed Second Amended Complaint, under seal, if "he could do so consistent with his Rule 11 obligations." ECF Dkt. No. 97.

Plaintiff filed the Second Amended Complaint ("Amended Complaint") on July 20, 2020. *See* ECF Dkt. No. 113. Again, the Lusk Defendants and non-Lusk Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF Dkt. Nos. 108 & 110. On July 14, 2020,

---

[1] Apparently, Plaintiff did not adjust his numbering of the amended complaints when the matter was removed to federal court. The document entitled "Second Amended Complaint" filed by Plaintiff on July 20, 2020 was actually his fourth complaint, in total, filed in this matter.

Plaintiff filed his misnomered "Reply in Support of Motion for Leave to File Second Amended Complaint" apparently as his Response in Opposition to the Defendants' Motions to Dismiss. *See* ECF Dkt. No. 112. Plaintiff's Response contains the same false allegations that the Lusk Defendants have not complied with written discovery in this matter as Plaintiff's previous Response. *See id.* at pp. 15-16.

### *Plaintiff's Discovery Issued to and Answered by the Lusk Defendants*

On March 31, 2019, Plaintiff issued both written Interrogatories and Requests to Produce upon the Lusk Defendants. The Lusk Defendants served their Answers to Interrogatories and Responses to Plaintiff's Requests to Produce on April 29, 2019. Copies are attached as Exhibits A & B. These were served via e-mail to Caghan on May 1, 2019. A copy of the e-mail is attached as Exhibit C. The Lusk Defendants' responses to Plaintiff's written discovery were again served upon Caghan via e-mail on May 13, 2019. A copy of the May 13, 2019 e-mail is attached as Exhibit D. The Lusk Defendants' responses to Plaintiff's written discovery were again served upon Caghan on August 9, 2019 after he again complained to this Court that he had not received responses to discovery. A copy of the August 9, 2019 letter and e-mail is attached as Exhibit E. The Lusk Defendants' responses to written discovery were also attached as an exhibit to their Reply in Support of their Motion to Dismiss the Amended Complaint, filed on May 22, 2019. *See* ECF Dkt. No. 44 at pp. 13-43. Thus, in total, the Lusk Defendants have served their full and complete responses to Plaintiff's written discovery ***four (4) times***.

### *Substantial Compliance with Rule 11's Notice Requirements by the Lusk Defendants' Counsel*

On January 13, 2020, the Lusks' counsel wrote a Rule 11 letter to Caghan noting the frivolous and baseless allegations against the Lusk Defendants, especially since they had never participated in any closing or real estate transaction for Greenscape prior to Plaintiff's failed

purchase. A copy of the January 13, 2020 Rule 11 Letter is attached as Exhibit F. The Lusks' counsel also noted Caghan's false statements in Plaintiff's Response to Pending Motions to Dismiss (ECF Dkt. No. 89) wherein Caghan asserted that the Lusk Defendants had not answered written discovery. *See id.* On January 29, 2020, Caghan responded to the Rule 11 Letter and ***admitted he had received the Lusk Defendants' answers to Discovery***, but demanded production of documents for which attorney-client privilege was asserted and offered to do so under a "protective order." A copy of the letter is attached as Exhibit G. Caghan never corrected his false statements in Plaintiff's Response to Pending Motions to Dismiss (ECF Dkt. No. 89) concerning the Lusk Defendants' compliance with discovery. Nor did Caghan correct his false statements before the Court at the January 30, 2020 hearing. Instead, he again made numerous statements that discovery had not been answered.

On February 4, 2020, the Lusks' attorney responded to Caghan's January 29, 2020 letter and informed him that pursuant to Illinois law, attorney-client privilege rested with the client, Greenscape Homes, not the attorney, Lusk. A copy of the letter is attached as Exhibit H. Thus, the Lusk Defendants could not waive its client's privilege, despite the offer of an "agreed protective order." *See id.* Caghan did not respond to the February 4, 2020 letter.

On July 15, 2020, the Lusks' counsel sent another Rule 11 letter to Caghan requesting that Plaintiff withdraw the frivolous statements in Plaintiff's Response to the Motions to Dismiss wherein he asserted that the Lusk Defendants had not answered written discovery. A copy of the July 15, 2020 letter is attached as Exhibit I. On July 20, 2020, Caghan responded to the July 15, 2020 letter and denied receiving the February 4, 2020 e-mail or letter. A copy is attached as Exhibit J. Caghan made this claim despite the fact that the February 4, 2020 letter was sent to the same e-mail address from which Caghan sent his January 29, 2020 letter. *Compare* Exhibit G *with* Exhibit

H. Caghan again demanded production of the Lusk Defendants' privileged documents. *Id.* He did not agree to remove any statements from Plaintiff's Response to the Lusk Defendants' Motion to Dismiss. *Id.*

Based on the above, the Lusk Defendants have substantially complied with the Seventh Circuit's Rule 11 Notice requirements to Plaintiff. *See Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 808 (7th Cir. 2003).

## LEGAL STANDARD

Rule 11 requires that an attorney certify to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that any pleading or motion presented to the court (1) is not being presented for any improper purpose; (2) is warranted by existing law; and (3) has evidentiary support. Fed. R. Civ. P. 11(b). Violation of these provisions is grounds for the imposition of "an appropriate sanction," which may include "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* at 11(c)(1) & (4).

The primary purpose of Rule 11 is "to deter baseless filings in the district court." *Cooter & Gell v. Hartmarx Corp., et al.*, 496 U.S. 384, 393 (1990). A "court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry." *Id.* The duty to investigate to determine if a complaint sets out a viable claim renews at every stage of litigation; while a party may reasonably believe discovery will reveal evidentiary support, an attorney may only proceed if the support has, indeed, materialized. *McGreal v. Village of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019).

6

"To impose Rule 11 sanctions, the court need only find that the signor acted unreasonably in signing the pleadings based upon available factual information which a reasonable inquiry could have discovered." *ATA Info Servs., Inc. v. J.C.I., Inc.*, No 89 C 9615, 1992 U.S. Dist. LEXIS 7143, at *1 (N.D. Ill. May 26, 1992). An objective standard is used to determine if an inquiry is reasonable. *Id.*

## ARGUMENT

I.     PLAINTIFF'S RESPONSE CONTAINS NUMEROUS FALSE STATEMENTS CONCERNING THE LUSK DEFENDANTS' COMPLIANCE WITH PLAINTIFF'S WRITTEN DISCOVERY.

Caghan electronically signed Plaintiff's Response to the Lusk Defendants' Motion to Dismiss ("Response"). *See* ECF Dkt. No. 114 at p. 15. Therein, Caghan raises the exact same arguments that the Lusk Defendants have failed to comply with written discovery as he made in Plaintiff's May 10, 2019 and January 2, 2020 Responses to the Lusk Defendants' Motion to Dismiss. *See* ECF Dkt. No. 40 at pp. 12-14; ECF Dkt. No. 89 at pp. 12-14. In fact, Caghan states on numerous occasions that the Defendants have either failed to produce documents or failed to answer written discovery in this matter. *See generally id.*

With regards to the Lusk Defendants, Caghan stated:

> The defendants Michael Lusk and Lusk Law LLC failed to produce *any items subject to the Request for Production served upon them*. (See **Exhibit C**, *Plaintiffs' Request for Production to Defendants Michael P. Lusk and Lusk Law LLC*). Plaintiff's attorney has no record of receiving any document production nor objections from the attorneys for Michael P. Lusk and Lusk Law LLC.

Response at p. 13 (*emphasis added*). Plaintiff continues and stated:

> The attorney-defendants refused to produce documents showing their participation and status in the racketeering enterprise. The production requests documents from closings by Michael P. Lusk for the racketeering enterprise from January 1, 2014 through April 1, 2019. (See **Exhibit C**, *Plaintiffs' Request for Production to Defendants Michael P. Lusk and Lusk Law LLC*, par. #26). *Defendants failed to produce anything. Plaintiff's counsel has no record of objections to the requests for production nor compliance.*

Response at p. 14 (*emphasis added*).

Mr. Caghan's statements are demonstrably false. On May 1, 2019, Caghan was served with the Lusk Defendants responses to Plaintiff's written discovery via e-mail. *See* Exhibits A-C. On May 13, 2019, the Lusks' attorney wrote to Plaintiff's counsel pursuant to Rule 11 and again attached Lusk Law and Michael P. Lusk's complete and full response to Plaintiff's discovery via electronic mail. *See* Exhibit C. Caghan even acknowledged receipt of these discovery responses in his July 20, 2020 e-mail to Lusks' counsel.

On August 9, 2019, the Lusks' counsel again sent Caghan the Lusk Defendants' complete and full response to Plaintiff's written discovery for a third time. *See* Exhibit D. The Lusk Defendants' answers to written discovery were even attached to their Reply in Support of Motion to Dismiss the Amended Complaint filed on April 29, 2019. *See* ECF Dkt. No. 44 at pp. 13-43.

However, most egregiously, on January 13, 2020, the Lusks' attorney again wrote a Rule 11 Letter to Caghan highlighting the four (4) previous occasions on which he had been served the Lusk Defendants full and complete responses to written discovery. *See* Exhibit E. On January 29, 2020 Caghan ***admitted that he received the Lusk Law Defendants answers to discovery***. *See* Exhibit F. Now, six months later, Caghan claims in a response filed with this Court that the Lusk "Defendants failed to produce anything" and "Plaintiff's counsel has no record of objections to the requests for production nor compliance" with written discovery from the Lusk Defendants. This must be a deliberate false statement. *Compare* ECF Dkt. No. 114 at p. 14 *with* Exhibit F.

Ill. R. Prof. Conduct 3.3(a)(1) states that "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." This is not the first, or even the second occasion which Caghan has made deliberate false statements to a tribunal. *See Iowa Sup. Ct. Atty. Disciplinary Bd. v. Caghan*, 927 N.W.2d 591 (Iowa 2019) attached and marked as Exhibit K.

Sanctions are appropriate against Attorney Caghan for making false statements to this Court in Plaintiff's Response filed on July 20, 2020 and then refusing to remove said false statements when they were brought to his attention. *See* Exhibit I.

      WHEREFORE, Defendants Michael P. Lusk and Lusk Law LLC, respectfully request that this Honorable Court enter an order for the following relief:

A. Granting their Motion for Sanctions pursuant to Fed. R. Civ. P. 11(b);

B. Granting them leave to file a Petition for Reimbursement of Fees pursuant to Fed. R. Civ. P. 11(c); and

C. Granting all such other and further relief as this Court deems reasonable and just.

                Respectfully submitted,
                **MICHAEL P. LUSK AND LUSK LAW, LLC,**

                By:      /s/Anthony G. Barone
                          One of Their Attorneys

Anthony G. Barone (#6196315)
Jason W. Jochum (#6315450)
Barone Law Group, P.C.
17W635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:   630-472-0864
*abarone@baronelawgroup.com*
*jjochum@baronelawgroup.com*

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that I filed Michael P. Lusk and Lusk Law, LLC's Motion for

Sanctions through the Court's CM/ECF system, which will cause electronic notification of this

filing to be sent to all counsel of record on July 29, 2020.


By:     /s/ Anthony G. Barone
        Anthony G. Barone


Anthony G. Barone (#6196315)
Jason W. Jochum (#6315450)
Barone Law Group, P.C.
17W635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864
*abarone@baronelawgroup.com*
*jjochum@baronelawgroup.com*

10

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| PRABHAS MOKKAPAT,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>)<br>) | Case No. 1:19-cv-00228 |
| GREENSCAPE HOMES, LLC, GREENSCAPE<br>HOMES – KPN LLC, GREENSCAPE REALTY<br>LLC, KPN REAL ESTATE HOLDINGS LLC,<br>GREENSCAPE VENTURES, LLC, MKJ<br>HOLDINGS, LLC, GREENSCAPE VENTURES<br>L.L.C., KENNETH P. NEUMANN, KEITH R.<br>NEUMANN, JENNIFER BROST, KATHLEEN<br>WASHKO, ELIZABETH D. KOZAR, MIHCAEL<br>P. LUSK AND LUSK LAW LLC,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Honorable John Robert Blakey |

## DEFENDANTS MICHAEL P. LUSK AND LUSK LAW LLC'S
## ANSWERS TO PLAINTIFF'S INTERROGATORIES

Now Come the Defendants, Michael P. Lusk and Lusk Law LLC, by and through their attorneys, Barone Law Group, P.C., and for their Answers to Plaintiff, Prabhas Mokkapat's Interrogatories, state as follows:

**INTERROGATORY NO. 1:**   State the full name, birth date, telephone number, home address, business address and job title or capacity of each and every person who provided information concerning these interrogatories and the person who signed the interrogatories.

**ANSWER:**   Michael P. Lusk, c/o defense counsel.

**INTERROGATORY NO. 2:**       From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of GREENSCAPE HOMES – KPN LLC:

    A.    Warranty deed;
    B.    Special Warranty Deed;
    C.    Quitclaim Deed;
    D.    Other Deed;
    E.    GAP Undertaking Affidavit;
    F.    PTAX-203 Illinois Real Estate Transfer Declaration;
    G.    Non-Foreign Status Certificate (FIRPTA);
    H.    Closing Instructions;

1



I.      Settlement Statement; or

J.      Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)      The type of document;

(b)      The name of each person that worked on preparing the document;

(c)      The name, Email address and regular address of each person to whom it was sent;

(d)      The date of transmission;

(e)      The address, county and PIN number of the subject property;

(f)      The stated full consideration for the property;

(g)      The closing date and names of buyers and sellers and the purchase price; and

(h)      Please produce all documents relating thereto.

**ANSWER:**  No.

**INTERROGATORY NO. 3:**    From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of GREENSCAPE HOMES – KPN LLC:

A.      Warranty deed;

B.      Special Warranty Deed;

C.      Quitclaim Deed;

D.      Other Deed;

E.      GAP Undertaking Affidavit;

F.      PTAX-203 Illinois Real Estate Transfer Declaration;

G.      Non-Foreign Status Certificate (FIRPTA);

H.      Closing instructions;

I.      Settlement Statement; or

J.      Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)      The type of document;

(b)      The name of each person that worked on preparing the document;

(c)      The name, Email address and regular address of each person to whom it was sent;

(d)      The date of transmission;

(e)      The address, county and PIN number of the subject property;

(f)      The closing date and names of buyers and sellers and the purchase price; and

(g)      Please produce all documents relating thereto.

**ANSWER:**  No.

**INTERROGATORY NO. 4:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of GREENSCAPE HOMES – KPN LLC:

    A.    Survey of Real Estate;
    B.    Title Insurance Policy;
    C.    Payoff Letter;
    D.    Deed;
    E.    Closing instructions;
    F.    Settlement statement;
    G.    PTAX-203 Illinois Real Estate Transfer Declaration;
    H.    Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

    (a)    The type of document or item
    (b)    The name of each person that purchased, ordered, obtained or transmitted each such document or item;
    (c)    The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
    (d)    The date of purchase, request, order or transmission;
    (e)    The address, county and PIN number of the subject property;
    (f)    The closing date and names of buyers and sellers and the purchase price; and
    (g)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 5:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of GREENSCAPE HOMES – KPN LLC. If the answer is in the affirmative, for each such closing please identify:

    (a)    The names of the buyers and sellers and the purchase price;
    (b)    The property address and PIN number;
    (c)    The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC
    (d)    The amount of attorneys' fees paid and the payees at closing; and
    (e)    Please produce all documents relating to same.

**ANSWER:** No.

**INTERROGATORY NO. 6:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of GREENSCAPE HOMES, LLC:

3

A.  Warranty deed;
B.  Special Warranty Deed;
C.  Quitclaim Deed;
D.  Other Deed;
E.  GAP Undertaking Affidavit;
F.  PTAX-203 Illinois Real Estate Transfer Declaration;
G.  Non-Foreign Status Certificate (FIRPTA);
H.  Closing Instructions;
I.  Settlement Statement; or
J.  Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)  The type of document;
(b)  The name of each person that worked on preparing the document;
(c)  The name, Email address and regular address of each person to whom it was sent;
(d)  The date of transmission;
(e)  The address, county and PIN number of the subject property;
(f)  The stated full consideration for the property;
(g)  The closing date and names of buyers and sellers and the purchase price; and
(h)  Please produce all documents relating thereto.

**ANSWER:**  Quitclaim deeds and PTAX Declarations were prepared as part of an

intercompany transfer between Greenscape Homes, LLC and MKJ Holdings, LLC.

Answering further, Lusk refers Plaintiff to the documents produced as Lusk 101 through

Lusk 130.

**INTERROGATORY NO. 7:**  From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of GREENSCAPE HOMES, LLC:

A.  Warranty deed;
B.  Special Warranty Deed;
C.  Quitclaim Deed;
D.  Other Deed;
E.  GAP Undertaking Affidavit;
F.  PTAX-203 Illinois Real Estate Transfer Declaration;
G.  Non-Foreign Status Certificate (FIRPTA);
H.  Closing instructions;
I.  Settlement Statement; or

4

J.      Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)    The type of document;
(b)    The name of each person that worked on preparing the document;
(c)    The name, Email address and regular address of each person to whom it was sent;
(d)    The date of transmission;
(e)    The address, county and PIN number of the subject property;
(f)    The closing date and names of buyers and sellers and the purchase price; and
(g)    Please produce all documents relating thereto.

**ANSWER:** Quitclaim deeds and PTAX Declarations were emailed as part of an intercompany transfer between Geenscape Homes, LLC and MKJ Holdings, LLC. No third party buyers were involved. Answering further, Lusk refers Plaintiff to the documents produced as Lusk 101 through Lusk 130.

**INTERROGATORY NO. 8:**    From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of GREENSCAPE HOMES, LLC:

A.    Survey of Real Estate;
B.    Title Insurance Policy;
C.    Payoff Letter;
D.    Deed;
E.    Closing instructions;
F.    Settlement statement;
G.    PTAX-203 Illinois Real Estate Transfer Declaration;
H.    Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

(a)    The type of document or item
(b)    The name of each person that purchased, ordered, obtained or transmitted each such document or item;
(c)    The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
(d)    The date of purchase, request, order or transmission;
(e)    The address, county and PIN number of the subject property;
(f)    The closing date and names of buyers and sellers and the purchase price; and
(g)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 9:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of GREENSCAPE HOMES, LLC. If the answer is in the affirmative, for each such closing please identify:

(a)　The names of the buyers and seller and the purchase price s;
(b)　The property address and PIN number;
(c)　The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC
(d)　The amount of attorneys' fees paid and the payees at closing; and
(e)　Please produce all documents relating to same.

**ANSWER:** No.

**INTERROGATORY NO. 10:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of MKJ HOLDINGS LLC:

A.　Warranty deed;
B.　Special Warranty Deed;
C.　Quitclaim Deed;
D.　Other Deed;
E.　GAP Undertaking Affidavit;
F.　PTAX-203 Illinois Real Estate Transfer Declaration;
G.　Non-Foreign Status Certificate (FIRPTA);
H.　Closing Instructions;
I.　Settlement Statement; or
J.　Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)　The type of document;
(b)　The name of each person that worked on preparing the document;
(c)　The name, Email address and regular address of each person to whom it was sent;
(d)　The date of transmission;
(e)　The address, county and PIN number of the subject property;
(f)　The stated full consideration for the property;
(g)　The closing date and names of buyers and sellers and the purchase price; and
(h)　Please produce all documents relating thereto.

**ANSWER:** See answer to Interrogatory No. 6.

6

**INTERROGATORY NO. 11:**     From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of MKJ HOLDINGS LLC:

    A.    Warranty deed;
    B.    Special Warranty Deed;
    C.    Quitclaim Deed;
    D.    Other Deed;
    E.    GAP Undertaking Affidavit;
    F.    PTAX-203 Illinois Real Estate Transfer Declaration;
    G.    Non-Foreign Status Certificate (FIRPTA);
    H.    Closing instructions;
    I.    Settlement Statement; or
    J.    Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

    (a)    The type of document;
    (b)    The name of each person that worked on preparing the document;
    (c)    The name, Email address and regular address of each person to whom it was sent;
    (d)    The date of transmission;
    (e)    The address, county and PIN number of the subject property;
    (f)    The closing date and names of buyers and sellers and the purchase price; and
    (g)    Please produce all documents relating thereto.

**ANSWER:**  See answer to Interrogatory No. 7.

**INTERROGATORY NO. 12:**     From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of MKJ HOLDINGS LLC:

    A.    Survey of Real Estate;
    B.    Title Insurance Policy;
    C.    Payoff Letter;
    D.    Deed;
    E.    Closing instructions;
    F.    Settlement statement;
    G.    PTAX-203 Illinois Real Estate Transfer Declaration;
    H.    Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

7

(a)     The type of document or item
(b)     The name of each person that purchased, ordered, obtained or transmitted each such document or item;
(c)     The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
(d)     The date of purchase, request, order or transmission;
(e)     The address, county and PIN number of the subject property;
(f)     The closing date and names of buyers and sellers and the purchase price; and
(g)     Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 13:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of MKJ HOLDINGS LLC. If the answer is in the affirmative, for each such closing please identify:

(a)     The names of the buyers and sellers and the purchase price;
(b)     The property address and PIN number;
(c)     The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC
(d)     The amount of attorneys' fees paid and the payees at closing; and
(e)     Please produce all documents relating to same.

**ANSWER:** No.

**INTERROGATORY NO. 14:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of KPN REAL ESTATE HOLDINGS LLC:

A.     Warranty deed;
B.     Special Warranty Deed;
C.     Quitclaim Deed;
D.     Other Deed;
E.     GAP Undertaking Affidavit;
F.     PTAX-203 Illinois Real Estate Transfer Declaration;
G.     Non-Foreign Status Certificate (FIRPTA);
H.     Closing Instructions;
I.     Settlement Statement; or
J.     Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)     The type of document;
(b)     The name of each person that worked on preparing the document;

(c)    The name, Email address and regular address of each person to whom it was sent;

(d)    The date of transmission;

(e)    The address, county and PIN number of the subject property;

(f)    The stated full consideration for the property;

(g)    The closing date and names of buyers and sellers and the purchase price; and

(h)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 15:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of KPN REAL ESTATE HOLDINGS LLC:

A.    Warranty deed;

B.    Special Warranty Deed;

C.    Quitclaim Deed;

D.    Other Deed;

E.    GAP Undertaking Affidavit;

F.    PTAX-203 Illinois Real Estate Transfer Declaration;

G.    Non-Foreign Status Certificate (FIRPTA);

H.    Closing instructions;

I.    Settlement Statement; or

J.    Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)    The type of document;

(b)    The name of each person that worked on preparing the document;

(c)    The name, Email address and regular address of each person to whom it was sent;

(d)    The date of transmission;

(e)    The address, county and PIN number of the subject property;

(f)    The closing date and names of buyers and sellers and the purchase price; and

(g)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 16:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of KPN REAL ESTATE HOLDINGS LLC:

A.    Survey of Real Estate;

9

B.  Title Insurance Policy;
C.  Payoff Letter;
D.  Deed;
E.  Closing instructions;
F.  Settlement statement;
G.  PTAX-203 Illinois Real Estate Transfer Declaration;
H.  Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

(a)  The type of document or item
(b)  The name of each person that purchased, ordered, obtained or transmitted each such document or item;
(c)  The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
(d)  The date of purchase, request, order or transmission;
(e)  The address, county and PIN number of the subject property;
(f)  The closing date and names of buyers and sellers and the purchase price; and
(g)  Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 17:**  From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of KPN REAL ESTATE HOLDINGS LLC.  If the answer is in the affirmative, for each such closing please identify:

(a)  The names of the buyers and sellers and the purchase price;
(b)  The property address and PIN number;
(c)  The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC
(d)  The amount of attorneys' fees paid and the payees at closing; and
(e)  Please produce all documents relating to same.

**ANSWER:** No.

**INTERROGATORY NO. 18:**  From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of GREENSCAPE REALTY LLC:

A.  Warranty deed;
B.  Special Warranty Deed;
C.  Quitclaim Deed;
D.  Other Deed;
E.  GAP Undertaking Affidavit;

10

F.    PTAX-203 Illinois Real Estate Transfer Declaration;
G.    Non-Foreign Status Certificate (FIRPTA);
H.    Closing Instructions;
I.    Settlement Statement; or
J.    Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)    The type of document;
(b)    The name of each person that worked on preparing the document;
(c)    The name, Email address and regular address of each person to whom it was sent;
(d)    The date of transmission;
(e)    The address, county and PIN number of the subject property;
(f)    The stated full consideration for the property;
(g)    The closing date and names of buyers and sellers and the purchase price; and
(h)    Please produce all documents relating thereto.

**ANSWER:**  No.

**INTERROGATORY NO. 19:**    From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of GREENSCAPE REALTY LLC:

A.    Warranty deed;
B.    Special Warranty Deed;
C.    Quitclaim Deed;
D.    Other Deed;
E.    GAP Undertaking Affidavit;
F.    PTAX-203 Illinois Real Estate Transfer Declaration;
G.    Non-Foreign Status Certificate (FIRPTA);
H.    Closing instructions;
I.    Settlement Statement; or
J.    Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a)    The type of document;
(b)    The name of each person that worked on preparing the document;
(c)    The name, Email address and regular address of each person to whom it was sent;
(d)    The date of transmission;
(e)    The address, county and PIN number of the subject property;
(f)    The closing date and names of buyers and sellers and the purchase price; and
(g)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 20:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of GREENSCAPE REALTY LLC:

      A.      Survey of Real Estate;
      B.      Title Insurance Policy;
      C.      Payoff Letter;
      D.      Deed;
      E.      Closing instructions;
      F.      Settlement statement;
      G.      PTAX-203 Illinois Real Estate Transfer Declaration;
      H.      Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

      (a)      The type of document or item;
      (b)      The name of each person that purchased, ordered, obtained or transmitted each such document or item;
      (c)      The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
      (d)      The date of purchase, request, order or transmission;
      (e)      The address, county and PIN number of the subject property;
      (f)      The closing date and names of buyers and sellers and the purchase price; and
      (g)      Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 21:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of GREENSCAPE REALTY LLC? If the answer is in the affirmative, for each such closing please identify:

      (a)      The names of the buyers and sellers and the purchase price;
      (b)      The property address and PIN number;
      (c)      The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC
      (d)      The amount of attorneys' fees paid and the payees at closing; and
      (e)      Please produce all documents relating to same.

**ANSWER:** No.

12

**INTERROGATORY NO. 22:** From January 1, 2014 through April 1, 2019, did Michael P. Lusk, Lusk Law LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of GREENSCAPE VENTURES L.L.C. or GREENSCAPE VENTURES, LLC:

      A.     Warranty deed;
      B.     Special Warranty Deed;
      C.     Quitclaim Deed;
      D.     Other Deed;
      E.     GAP Undertaking Affidavit;
      F.     PTAX-203 Illinois Real Estate Transfer Declaration;
      G.     Non-Foreign Status Certificate (FIRPTA);
      H.     Closing Instructions;
      I.     Settlement Statement; or
      J.     Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

      (a)     The type of document;
      (b)     The name of each person that worked on preparing the document;
      (c)     The name, Email address and regular address of each person to whom it was sent;
      (d)     The date of transmission;
      (e)     The address, county and PIN number of the subject property;
      (f)     The stated full consideration for the property;
      (g)     The closing date and names of buyers and sellers and the purchase price; and
      (h)     Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 23:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of GREENSCAPE VENTURES L.L.C. or GREENSCAPE VENTURES, LLC:

      A.     ,Warranty deed;
      B.     Special Warranty Deed;
      C.     Quitclaim Deed;
      D.     Other Deed;
      E.     GAP Undertaking Affidavit;
      F.     PTAX-203 Illinois Real Estate Transfer Declaration;
      G.     Non-Foreign Status Certificate (FIRPTA);
      H.     Closing instructions;
      I.     Settlement Statement; or
      J.     Other real estate closing document.

13

If the answer is in the affirmative, for each such document please identify:

    (a)    The type of document;
    (b)    The name of each person that worked on preparing the document;
    (c)    The name, Email address and regular address of each person to whom it was sent;
    (d)    The date of transmission;
    (e)    The address, county and PIN number of the subject property;
    (f)    The closing date and names of buyers and sellers and the purchase price; and
    (g)    Please produce all documents relating thereto.

**ANSWER:** No.

    **INTERROGATORY NO. 24:**    From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of GREENSCAPE VENTURES L.L.C. or GREENSCAPE VENTURES, LLC:

    A.    Survey of Real Estate;
    B.    Title Insurance Policy;
    C.    Payoff Letter;
    D.    Deed;
    E.    Closing instructions;
    F.    Settlement statement;
    G.    PTAX-203 Illinois Real Estate Transfer Declaration;
    H.    Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

    (a)    The type of document or item
    (b)    The name of each person that purchased, ordered, obtained or transmitted each such document or item;
    (c)    The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
    (d)    The date of purchase, request, order or transmission;
    (e)    The address, county and PIN number of the subject property;
    (f)    The closing date and names of buyers and sellers and the purchase price; and
    (g)    Please produce all documents relating thereto.

**ANSWER:** No.

    **INTERROGATORY NO. 25:**    From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of GREENSCAPE VENTURES

14

L.L.C. or GREENSCAPE VENTURES, LLC?   If the answer is in the affirmative, for each such closing please identify:

    (a)    The names of the buyers and sellers and the purchase price;

    (b)    The property address and PIN number;

    (c)    The person(s) attending on behalf of GREENSCAPE HOMES – KPN LLC

    (d)    The amount of attorneys' fees paid and the payees at closing; and

    (e)    Please produce all documents relating to same.

**ANSWER:**  No.


**INTERROGATORY NO. 26:**  From January 1, 2014 through April 1, 2019, did Michael P. Lusk, Lusk Law LLC, their partners, associates, attorneys, employees, paralegals, secretaries or assistants prepare or cause to be prepared any of the following documents for a closing on behalf of any company not a defendant in which KENNETH P. NEUMANN or KEITH R. NEUMANN or any member of their families has a material financial interest, direct or indirect:

15

A. Warranty deed;
B. Special Warranty Deed;
C. Quitclaim Deed;
D. Other Deed;
E. GAP Undertaking Affidavit;
F. PTAX-203 Illinois Real Estate Transfer Declaration;
G. Non-Foreign Status Certificate (FIRPTA);
H. Closing Instructions;
I. Settlement Statement; or
J. Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a) The name of the company and the type of document;
(b) The name of each person that worked on preparing the document;
(c) The name, Email address and regular address of each person to whom it was sent;
(d) The date of transmission;
(e) The address, county and PIN number of the subject property;
(f) The stated full consideration for the property;
(g) The closing date and names of buyers and sellers and the purchase price; and
(h) Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 27:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants transmit or cause to be transmitted by U.S. Mail, commercial carrier or Email any of the following documents for a closing on behalf of any company not a defendant in which KENNETH P. NEUMANN or KEITH R. NEUMANN or any member of their families has a material financial interest, direct or indirect:

A. Warranty deed;
B. Special Warranty Deed;
C. Quitclaim Deed;
D. Other Deed;
E. GAP Undertaking Affidavit;
F. PTAX-203 Illinois Real Estate Transfer Declaration;
G. Non-Foreign Status Certificate (FIRPTA);
H. Closing instructions;
I. Settlement Statement; or
J. Other real estate closing document.

If the answer is in the affirmative, for each such document please identify:

(a) The name of the company and the type of document;

16

(b)     The name of each person that worked on preparing the document;

(c)     The name, Email address and regular address of each person to whom it was sent;
(d)     The date of transmission;
(e)     The address, county and PIN number of the subject property;
(f)     The closing date and names of buyers and sellers and the purchase price; and
(g)     Please produce all documents relating thereto.

**ANSWER:**  No.

**INTERROGATORY NO. 28:**     From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or their partners, associates, attorneys, employees, paralegals, secretaries or assistants purchase, request, order, obtain, transmit or cause to be purchased, ordered, obtained or transmitted any of the following documents or items on behalf of any company not a defendant in which KENNETH P. NEUMANN or KEITH R. NEUMANN or any member of their families has a material financial interest, direct or indirect:

A.     Survey of Real Estate;
B.     Title Insurance Policy;
C.     Payoff Letter;
D.     Deed;
E.     Closing instructions;
F.     Settlement statement;
G.     PTAX-203 Illinois Real Estate Transfer Declaration;
H.     Other document or item necessary for a real estate closing.

If the answer is in the affirmative, for each such item or document please identify:

(a)     The name of the company the work was done for and type of document or item;
(b)     The name of each person that purchased, ordered, obtained or transmitted each such document or item;
(c)     The name, Email address and regular address of each person from whom it was purchased, ordered, sent or transmitted;
(d)     The date of purchase, request, order or transmission;
(e)     The address, county and PIN number of the subject property;
(f)     The closing date and names of buyers and sellers and the purchase price; and
(g)     Please produce all documents relating thereto.

**ANSWER:**  No.

**INTERROGATORY NO. 29:**     From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals attend a real estate closing, in person or electronically, on behalf of any company not a defendant

17

in which KENNETH P. NEUMANN or KEITH R. NEUMANN or any member of their families has a material financial interest, direct or indirect? If the answer is in the affirmative, for each such closing please identify:

     (a)    The name of the company;
     (b)    The names of the buyers and sellers and the purchase price;
     (c)    The property address and PIN number;
     (d)    The person(s) attending and on which company's behalf; and
     (e)    Please produce all documents relating thereto.

**ANSWER:** No.

**INTERROGATORY NO. 30:** From January 1, 2014 through April 1, 2019, did MICHAEL P. LUSK, LUSK LAW LLC or any of their partners, associates, assistants or paralegals send or receive any Emails that contained any of the following words: (1) appraisal, (2) appraise, (3) appraised? If the answer is in the affirmative, please state:

     (a)    the names of the sender and recipients;
     (b)    the date of each Email;
     (c)    identify any attachments; and
     (d)    please produce copies of all relevant documents.

**ANSWER:** No.

**INTERROGATORY NO. 31:** State the name, address, and telephone number of each person having knowledge of facts material to this case and indicate the content of their knowledge.

**ANSWER:** None known to this Defendant. Investigation continues.

Respectfully submitted,
**MICHAEL P. LUSK AND LUSK LAW, LLC,**

By:    /s/Anthony G. Barone
       One of Their Attorneys

Anthony G. Barone (#6196315)
Angelo D. DiBartolomeo (#6312660)
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:   630-472-0864
abarone@baronelawgroup.com
adibartolomeo@baronelawgroup.com

## VERIFICATION

Under penalties of perjury as provided by United States law pursuant to 18 U.S.C. §1001, the undersigned certifies that the statements set forth in *Michael P. Lusk and Lusk Law LLC's Answers to Plaintiff's First Set of Interrogatories* are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies that he verily believes the same to be true.

Michael P. Lusk

## CERTIFICATE OF SERVICE

I, Angelo D. DiBartolomeo, an attorney for Defendants, Michael P. Lusk and Lusk Law, LLC, hereby certify that on the 29th day of April, 2019, caused the foregoing Michael P. Lusk and Lusk Law, LLC's Answers to Plaintiff's First Set of Interrogatories to be served upon the below by enclosing the same in an envelope addressed to each party at their address below, with postage fully prepaid and mailed said envelope in a U.S. Post Office Mail Box from 635 Butterfield Road, Suite 145, Oakbrook Terrace, Illinois.

By:    /s/ Angelo D. DiBartolomeo
           Angelo D. DiBartolomeo

## SERVICE LIST

Paul A. Caghan
Law Office of Paul Caghan, PC
300 N. LaSalle Street
Suite 4925
Chicago, IL 60654
(773) 469-8724
Email: caghan@ameritech.net
*Attorney for Plaintiff*

Michael A. O'Brien
Leslie Gregory Bleifuss
O'Brien Law Offices, P.C.
124A South County Farm Road
Wheaton, IL 60187
(630) 871-9400
Email: mobrien@obrienlawoffices.com
Email: lbleifuss@obrienlawoffices.com
*Attorneys for Greenscape Homes, LLC, Greenscape Homes-KPN LLC, Greenscape Realty LLC, KPN Real Estate Holdings, LLC, Greenscape Ventures, LLC, Jennifer Brost, and MKJ Holdings LLC*

Kevin Michael O'Hagan
Sheri A. Mercer
Ulyana Bekker
O'Hagan Meyer, LLC
One E. Wacker Drive
Suite 3400
Chicago, IL 60601
(312) 422-6120
Email: kohagan@ohaganmeyer.com
Email: smercier@ohaganmeyer.com
Email: ubekker@ohaganmeyer.com
*Attorneys for Greenscape Homes, LLC, Greenscape Homes-KPN LLC, Greenscape Realty LLC, Greenscape Ventures, LLC, Jennifer Brost, and MKJ Holdings LLC*

21

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

PRABHAS MOKKAPAT,                                )
    Plaintiff,                                  )
                           )
                           )
    v.                                          )    Case No. 1:19-cv-00228
                           )
GREENSCAPE HOMES, LLC, GREENSCAPE           )
HOMES – KPN LLC, GREENSCAPE REALTY          )
LLC, KPN REAL ESTATE HOLDINGS LLC,          )    Honorable John Robert Blakey
GREENSCAPE VENTURES, LLC, MKJ               )
HOLDINGS, LLC, GREENSCAPE VENTURES          )
L.L.C., KENNETH P. NEUMANN, KEITH R.        )
NEUMANN, JENNIFER BROST, KATHLEEN           )
WASHKO, ELIZABETH D. KOZAR, MIHCAEL         )
P. LUSK AND LUSK LAW LLC,                   )
    Defendants.                                 )

## DEFENDANTS MICHAEL P. LUSK AND LUSK LAW LLC'S
## <u>RESPONSE TO PLAINTIFF'S REQEUST FOR PRODUCTION</u>

NOW COME Defendants, Michael P. Lusk and Lusk Law LLC, by their attorneys, Barone

Law Group, P.C., and for their Response to Plaintiff Prabhas Mokkapat's Request for Production,

states as follows:

    1.    All documents referenced in or falling within the purview of the Interrogatories
contemporaneously served upon you.

    **RESPONSE:**    None.

    2.    All documents relating to acquisition, demolition and construction work at 738 S.
Cleveland, Arlington Heights, Illinois including but not limited to final construction blueprints,
work orders, change orders, job descriptions, job tickets, work tickets, punch lists, and all evidence
of actual construction details.

    **RESPONSE:**    See the New Home Purchase Agreement produced as Lusk 1

through Lusk 29, the change orders produced as Lusk 30 through Lusk 63, and email

communications and letters produced as Lusk 64 through Lusk 100.

    3.    All documents relating to the following work on the property at 738 S. Cleveland,
Arlington Heights, Illinois:



EXHIBIT
B

a. Demolition and deconstruction
b. Foundation
c. Exterior walls, frame out
d. Exterior plumbing installation
e. Exterior plumbing supplies and fixtures
f. Carpentry work
g. Carpentry supplies, lumber, materials
h. Insulation work
i. Insulation supplies and materials
j. Drywall installation
k. Drywall supplies and materials
l. Electrical Work
m. Electrical supplies and fixtures
n. Painting
o. Paint, coatings, supplies and materials
p. Concrete work
q. Concrete, supplies and materials
r. Water, sewer and septic work
s. Water, sewer and septic supplies and materials
t. Soffit and fascia work
u. Soffit and fascia materials and supplies
w. Roofing work
x. Roofing materials and supplies
y. Landscaping work
z. Landscaping supplies and materials
aa. Garage, supplies and materials
bb. Kitchen cabinets, countertops, sinks, lighting
cc. Refrigerator, Stove and accessories
dd. Ventilation throughout and installed fans
ee. Carpeting and Flooring throughout
ff. HVAC unit
gg. Water heater
hh. Water softener
ii. Basement work
jj. Additional work and materials for the subject property

**RESPONSE:**        None.


4.    Please produce all architectural drawings, renderings and designer drawings of the subject property.

**RESPONSE:**        None.

2

5.     For the subject property, please produce all documents relating to financing including but not limited to loan documents, loan applications, progress payments, liens, waivers of liens, contacts and communications with the Lender, checks, receipts, payments, ledgers, invoices and all evidence of financing and payments for construction.

**RESPONSE:**     See email communications and letters produced as Lusk 64 through Lusk 100.

6.     Please produce all employment and personnel records for workers (plumbers, electricians, drywall installers, painters, concrete workers, etc.) involved in the demolition, excavation and construction of the subject property, 738 S. Cleveland, Arlington Heights, Illinois.

**RESPONSE:**     None.

7.     Please produce all records of contractors, subcontractors, journeymen, apprentices and laborers that performed work or received payment for work on the property at 738 S. Cleveland, Arlington Heights, Illinois.

**RESPONSE:**     None.

8.     Please produce all Emails sent or received by MICHAEL P. LUSK from January 1, 2014 through December 31, 2018 that contained any one of the following words: (1) appraisal, (2) appraise, (3) appraised.

**RESPONSE:**     None.

9.     Please produce all Emails sent or received by any associate, partner, member, employee, legal assistant or secretary of LUSK LAW LLC from January 1, 2014 through December 31, 2018 that contained any one of the following words: (1) appraisal, (2) appraise, (3) appraised.

**RESPONSE:**     None.

10.     Please produce all leases and subleases of the subject property, rental income ledgers, expense ledgers, monthly income statements, master leases to 738 S. Cleveland Series Cochran Rental LLC, and other rental information including the subject property.

**RESPONSE:**     None.

11.     Please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, stock receipt stubs, dividends, distributions, W-2's, 1099's and all evidence of compensation to KENNETH P. NEUMANN,

KEITH R. NEUMANN, JENNIFER BROST, ELIZABETH D. KOZAR and KATHLEEN WASHKO from January 1, 2014 through April 1, 2019.

**RESPONSE:**     None.

12.   For GREENSCAPE HOMES – KPN LLC, please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**     See Articles of Amendment for Greenscape Homes, LLC produced

as Lusk 139 through Lusk 140.

13.   For KPN REAL ESTATE HOLDINGS LLC, please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**     See KPN Real Estate Holdings, LLC Limited Liability Company

Agreement produced as Lusk 131 through Lusk 136 and Certificate of Formation for KPN

Real Estate Holdings, LLC produced as Lusk 137.

14.   For GREENSCAPE VENTURES, LLC please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**     None.

15.   For GREENSCAPE VENTURES L.L.C., please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**     None.

16.    For MKJ HOLDINGS, LLC, please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**      See January 1, 2018 Action by Written Consent for MKJ Holdings,

LLC produced as Lusk 141 through 144, MKJ Holdings, LLC Limited Liability Company

Agreement produced as Lusk 145 through Lusk 177, MKJ Holdings, LLC Certificate of

Amendment to Certificate of Formation produced as Lusk 178-179, and MKJ Holdings,

LLC Certificate of Formation produced as Lusk 180.

17.    For GREENSCAPE HOMES, LLC, please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**      See Articles of Amendment for Greenscape Homes, LLC produced

as Lusk 139 through Lusk 140.

18.    For GREENSCAPE REALTY LLC, please produce all board of director meeting minutes and handouts, shareholder records, shareholder resolutions, director resolutions, director agreements, members list, operating agreements, articles of organization, subscription agreements, compensation agreements, employment agreements, salary contracts, shareholder agreements, stock purchase agreements, stock option agreements, stock shares, stock ledgers, and stock receipt stubs.

**RESPONSE:**      None.

19.    Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their family members, direct or indirect, in JRC Construction, Inc.

**RESPONSE:**      None.

20.    Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their family members, direct or indirect, in JKJ Properties LLC.

5

**RESPONSE:**     None.

21.   Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their or any of his family members, direct or indirect, in Greenscape Homes, LLC.

**RESPONSE:**     None.

22.   Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their or any of his family members, direct or indirect, in Greenscape Homes – KPN LLC.

**RESPONSE:**     None.

23.   Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their or any of his family members, direct or indirect, in MKJ Holdings LLC.

**RESPONSE:**     None.

24.   Please produce all documents relating to the material financial interests of Kenneth P. Neumann, Keith R. Neumann or any of their or any of his family members, direct or indirect, in 738 S Cleveland Series Cochran Rental LLC.

**RESPONSE:**     None.

25.   Please produce the following prepared by any employee, partner, associate, paralegal, assistant, secretary, or independent contractor of LUSK LAW LLC and MICHAEL P. LUSK for a real estate closing for any defendant from January 1, 2014 through April 1, 2019:

A.   Warranty deed;
B.   Special Warranty Deed;
C.   Quitclaim Deed;
D.   Other Deed;
E.   GAP Undertaking Affidavit;
F.   PTAX-203 Illinois Real Estate Transfer Declaration;
G.   Non-Foreign Status Certificate (FIRPTA);
H.   Closing Instructions;
I.   Settlement Statement; or
J.   Other real estate closing document.

**RESPONSE:**     None.

6

26. Please produce all evidence of transmission, commercial carrier delivery, mailing or Emailing of any of the following by any defendant for a real estate closing from January 1, 2014 through April 1, 2019:

A. Warranty deed;
B. Special Warranty Deed;
C. Quitclaim Deed;
D. Other Deed;
E. GAP Undertaking Affidavit;
F. PTAX-203 Illinois Real Estate Transfer Declaration;
G. Non-Foreign Status Certificate (FIRPTA);
H. Closing instructions;
I. Settlement Statement; or
J. Other real estate closing document.

**RESPONSE:** None.

27. Please produce all evidence of transmission, commercial carrier delivery, mailing or Emailing of any of the following by any defendant from January 1, 2014 through April 1, 2019:

A. Survey of Real Estate;
B. Title Insurance Policy;
C. Payoff Letter;
D. Deed;
E. Closing instructions;
F. Settlement statement;
G. PTAX-203 Illinois Real Estate Transfer Declaration;
H. Other document or item necessary for a real estate closing.

**RESPONSE:** None.

28. Please produce all communications with internet listing services, national and regional listing services, written, printed or prepared advertising material, promotional material, advertising copy, internet sales PDF documents, advertising proofs or drafts, galley proofs, proposed ads, marketing plans, marketing memos, sales presentations, intra-office memorandums, interoffice memorandums, sales department materials, charts and brochures, notes, letters, handouts, payment checks, invoices, billings, correspondence or other advertising material for residential properties prepared by or for GREENSCAPE HOMES, LLC, GREENSCAPE HOMES – KPN LLC, MKJ HOLDINGS, LLC, KPN REAL ESTATE HOLDINGS LLC, GREENSCAPE VENTURES, LLC or GREENSCAPE VENTURES L.L.C. by any employee, representative, advertising agency, media company, publicist or other person or entity from January 1, 2014 through April 1, 2019.

**RESPONSE:** None.

7

29. Please produce all real estate appraisals of the property at 738 S. Cleveland Avenue, Arlington Heights, Illinois 60005.

**RESPONSE:** None.

30. Please produce all federal and state income tax returns with all schedules and attachments for MICHAEL P. LUSK and LUSK LAW LLC for the years 2014 through 2018.

**RESPONSE:** Lusk objects to Request to Produce No. 30 as not reasonably calculated to lead to the discovery of admissible information.

Respectfully submitted,
**MICHAEL P. LUSK AND LUSK LAW, LLC,**

By:     /s/Anthony G. Barone_____
        One of Their Attorneys

Anthony G. Barone (#6196315)
Angelo D. DiBartolomeo (#6312660)
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864
abarone@baronelawgroup.com
adibartolomeo@baronelawgroup.com

8

## CERTIFICATE OF SERVICE

I, Angelo D. DiBartolomeo, an attorney for Defendants, Michael P. Lusk and Lusk Law, LLC, hereby certify that on the 29th day of April, 2019, caused the foregoing Michael P. Lusk and Lusk Law, LLC's Responses to Plaintiff's First Set of Requests to Produce to be served upon the below counsel of record by enclosing the same in an envelope addressed to each party at their address above, with postage fully prepaid and mailed said envelope in a U.S. Post Office Mail Box from 635 Butterfield Road, Suite 145, Oakbrook Terrace, Illinois.

By:     /s/ Angelo D. DiBartolomeo
        Angelo D. DiBartolomeo


## SERVICE LIST

Paul A. Caghan
Law Office of Paul Caghan, PC
300 N. LaSalle Street
Suite 4925
Chicago, IL 60654
(773) 469-8724
Email: caghan@ameritech.net
*Attorney for Plaintiff*

Michael A. O'Brien
Leslie Gregory Bleifuss
O'Brien Law Offices, P.C.
124A South County Farm Road
Wheaton, IL 60187
(630) 871-9400
Email: mobrien@obrienlawoffices.com
Email: lbleifuss@obrienlawoffices.com
*Attorneys for Greenscape Homes, LLC,*
*Greenscape Homes-KPN LLC, Greenscape*
*Realty LLC, KPN Real Estate Holdings, LLC,*
*Greenscape Ventures, LLC, Jennifer Brost,*
*and MKJ Holdings LLC*

Kevin Michael O'Hagan
Sheri A. Mercier
Ulyana Bekker
O'Hagan Meyer, LLC
One E. Wacker Drive
Suite 3400
Chicago, IL 60601
(312) 422-6120
Email: kohagan@ohaganmeyer.com
Email: smercier@ohaganmeyer.com
Email: ubekker@ohaganmeyer.com
*Attorneys for Greenscape Homes, LLC,*
*Greenscape Homes-KPN LLC, Greenscape*
*Realty LLC, Greenscape Ventures, LLC,*
*Jennifer Brost, and MKJ Holdings LLC*

9

**Jason Jochum**

| | |
|---|---|
| **From:** | Diana Hart |
| **Sent:** | Wednesday, May 1, 2019 10:53 AM |
| **To:** | Paul Caghan; kohagan@ohaganmeyer.com; Sheri Mercier; ubekker@ohaganmeyer.com; Michael O'Brien; Leslie Bleifuss |
| **Cc:** | Angelo DiBartolomeo; Anthony Barone |
| **Subject:** | Mokkapat v. Greenscape, et al, Case No. 19-cv-00338 |
| **Attachments:** | 2019 05 01 Lusk's Interrogatories to Plaintiff.pdf; 2019 05 01 Lusk's Requests to Produce to Plaintiff.pdf |

Counsel:

Attached please find Defendants Michael P. Lusk and Lusk Law LLC's First Set of Interrogatories to Plaintiff and First Set of Requests to Produce to Plaintiff. Please let me know if you have any questions.

**Diana Hart**
**Administrative Assistant**
**17W635 Butterfield Road, Ste. 145**
**Oakbrook Terrace, IL 60181**
**Phn: (630) 472-0037**
**Fax: (630) 472-0864**
**http://BaroneLawGroup.com**





1

**Jason Jochum**

| | |
|---|---|
| **From:** | Anthony Barone |
| **Sent:** | Monday, May 13, 2019 5:23 PM |
| **To:** | Paul Caghan |
| **Cc:** | Diana Hart |
| **Subject:** | Mokkapat v. Greenscape |
| **Attachments:** | 2019 04 29 Lusk Production of Documents.pdf; 2019 04 29 Lusk's Answers to Plaintiff's Interrogatories.pdf; 2019 04 29 Lusk's Response to Plaintiff's Request for Production.pdf; 2019 04 29 Lusk Privilege Log.pdf |

Paul:

We are in receipt of your Response to our Motion to Dismiss and wish to address with you your allegations that my client has not complied with your discovery requests. Simply put, your allegations are without merit. Please find attached copies of my client's discovery responses and document production that were mailed to your offices on April 29th. You should have received hard copies of the same prior to the filing of your Response.

As to the specific allegations raised in your Response, we refer you to the discovery responses in which we state that my client is not in possession of several of the documents you seek. First, my client does not have any documents or email communications relating to emails sent or received by my client containing the words "appraisal, appraise, or appraised" as my client did not create, receive, or review any appraisals as alleged in the amended complaint. Second, my client does not have any documents responsive to your requests for any closing documents because my client did not participate in any closings of any of the properties alleged in the amended complaint, including the property ultimately not purchased by your client and did not represent any of the Defendants in any such closings. Finally, my client does not have electronic templates of contracts as he did not prepare any such templates for use by the other Defendants.

My client has produced the limited documents in his possession for the very limited work he performed regarding your client's failed purchase of the Subject Property. He has no other documents responsive to your requests as he did not represent any of the Defendants in the closings of the properties as you allege in the amended complaint. I have written to you and attempted to discuss my client's lack of involvement with these matters on numerous occasions. To date, you have failed to respond.

As I have already informed you, the allegations against my client have no basis in fact. My client did not have knowledge of the real estate transaction involving your client until late October of 2017, which is reflected in my client's document production and my client's lack of any documents pertaining to your client (or any other transaction alleged in the amended complaint. Based on the foregoing, I reiterate my request that you dismiss my client from this lawsuit.

Please call if you wish to discuss this matter further.

**Anthony G. Barone**
**17W635 Butterfield Road, Ste. 145**
**Oakbrook Terrace, IL 60181**
**Phn: (630) 472-0037**
**Fax: (630) 472-0864**
**http://BaroneLawGroup.com**



1

**Jason Jochum**

| | |
|---|---|
| **From:** | Anthony Barone |
| **Sent:** | Friday, August 9, 2019 1:42 PM |
| **To:** | Paul Caghan |
| **Cc:** | Diana Hart |
| **Subject:** | Mokkapat v. Greenscape, No. 18 L 9016 |
| **Attachments:** | 2019 04 29 Lusk Production of Documents.pdf; 2019 04 29 Lusk's Answers to Plaintiff's Interrogatories.pdf; 2019 04 29 Lusk's Response to Plaintiff's Request for Production.pdf; 2019 04 29 Lusk Privilege Log.pdf |

Paul:

Per our conversation in court yesterday, attached please find Lusk Law's discovery responses. Please note that they were also attached to our Reply in Support of the Motion to Dismiss. As you can see, my clients did no residential closings for the Defendants. Please call me after you have had a chance to review.

**Anthony G. Barone**
**17W635 Butterfield Road, Ste. 145**
**Oakbrook Terrace, IL 60181**
**Phn: (630) 472-0037**
**Fax: (630) 472-0864**
**http://BaroneLawGroup.com**





1



**Barone
Law Group**
P.C.

635 Butterfield Road Suite 145
Oakbrook Terrace, IL 60181
**630.472.0037**
Fax: 630.472.0864
baronelawgroup.com

January 13, 2020

**VIA EMAIL & REGULAR MAIL**
Paul Caghan
Law Office of Paul Caghan LLC
300 North LaSalle St., Suite 4925
Chicago, IL 60654
caghan@ameritech.net

      RE:   *Prabhas Mokkapat v. Greenscape Homes, LLC, et al.*
             Case No. 19-cv-00228

Dear Paul:

On March 4, 2019, I wrote a second letter to you pursuant to Fed. R. Civ. P. 11 ("Rule 11") concerning the numerous false allegations plead in your Second Amended Complaint directed at my client. Having reviewed your recently filed "Response to Pending Motions to Dismiss" ("Response"), I again write to you concerning your repeated false statements made in pleadings in this matter pursuant to Rule 11. You have made a number of very specific allegations against my client that have absolutely no basis in fact.

In this regard, on page 2 of your Response, you state that Lusk Law, LLC received payments from the alleged fraudulent scheme for "false appraisals" that "enabled them to continue their function of preparing false closing documents, settlement statements, closing instructions, disbursement statements and escrow instructions for the enterprise." As I warned in my March 4, 2019 letter, Lusk Law did not prepare closing statements, settlement statements, closing instructions, disbursement statements or escrow instructions ever. Your repetition of these frivolous and false allegations must cease.

Similarly, on page 3 of your Response you state, without any predicate or limiting instruction, that Michael Lusk and Lusk Law, LLC "engaged in at least 6 predic[ate] acts of wire fraud and had organizational responsibilities for the racketeering enterprise." As noted in my March 4, 2019 letter, you were put on notice that my client had no part in any of those transactions or ever represented any of the Defendants in connection with any real estate transaction and had no part in any of the specific transactions referenced. Yet, you still chose to reassert these baseless allegations as facts in your Response.

On page 5 of your Response you state that Defendants failed to produce documents. This statement is also false. On April 29, 2019, Lusk Law, LLC and Michael Lusk fully and completely responded to Plaintiff's Interrogatories and Notice to Produce. *See* Exhibit A to Reply in Support of Motion to Dismiss Second Amended Complaint. That my client could not produce documents supporting your client's concocted fantasy that a real estate developer is involved in a vast criminal conspiracy does not make your statements with regards to my client's compliance with discovery any less false. You are directed to amend your Response accordingly.

Apparently you were not satisfied to simply take one bite at the [proverbial] apple and you continued your false statements about Lusk Law's compliance with discovery on page 12 of the



EXHIBIT
F

January 13, 2020
Mr. Paul Caghan
Page 2 of 2

Response where you stated, without qualification, that "defendants Michael Lusk and Lusk Law LLC failed to produce any items subject to the Request for Production served upon them." You further stated, "Plaintiff's attorney has no record of receiving any document production nor objections from the attorneys for Michael P. Lush and Lusk Law LLC." You further stated that Lusk Law "refused to produce documents showing their participation and status in the racketeering enterprise" and that "Plaintiff's counsel has no record of objections to the requests for production nor compliance." Each of the above statements is demonstrably false.

As noted above, Lusk Law, LLC and Michael P. Lusk answered written discovery on April 29, 2019 fully and completely. *See* Exhibit A to Reply in Support of Lusk Law, LLC's Motion to Dismiss. In response to Notice to Produce No. 8, they answered they had no responsive documents in their possession. *See id.* In response to Notice to Produce No. 26, they answered they had no responsive documents in their possession. *See id.* Your statements are false and injurious and their falsity will certainly be raised at the January 30, 2020 hearing on the Motion to Dismiss. You are again put on notice to withdraw these false statements from your Response.

On page 13 of your Response you state that Lusk Law has not produced documents pursuant to Notice to Produce No. 16. Again, this is false. Lusk Law produced documents labeled Lusk Law 141-180 as part of its Response to Notice to Produce No. 16. *See* Exhibit A to Reply in Support of Lusk Law, LLC's Motion to Dismiss. Again, that Lusk Law's production does not support your client's ill-conceived and frivolous action does not make your statement any less false. You are put on notice to withdraw these false statements from your Response.

On three (3) prior occasions we have sent you Michael P. Lusk and Lusk Law, LLC's responses to Plaintiff's written discovery. You were initially served with their Responses on May 1, 2019 via electronic mail. On May 13, 2019, I again wrote to you regarding your Response to Lusk Law's Motion to Dismiss wherein you again falsely claimed that Lusk Law had not answered Plaintiff's written discovery. Again, I attached Lusk Law and Michael P. Lusk's complete and full response to Plaintiff's discovery via electronic mail. Finally, on August 9, 2019, I sent you Lusk Law and Michael P. Lusk's complete and full response to Plaintiff's written discovery in this matter for a ***third*** time. Despite this, you have asserted on numerous occasions in your previous and newly filed Responses to Defendants' Motion to Dismiss that Lusk Law, LLC and Michael P. Lusk have not answered written discovery.

As I have warned you now on three (3) separate occasions regarding the frivolous nature of this action and your continued false statements in pleadings and responses, my client will entertain pursuing sanctions against both you and your client upon the Court's granting Lusk Law, LLC and Michael Lusk's Motion to Dismiss, absent your withdrawal of the above noted false statements. While it is not my regular practice to send Rule 11 letters, your continued actions have left me no choice.

Kind Regards,

Anthony G. Barone

AGB.dh
Enc.

Law Office of

# Paul Caghan

300 North LaSalle Street
Suite 4925
Chicago, Illinois 60654

773-469-8724
caghan@ameritech.net

January 29, 2020

Anthony G. Barone
Barone Law Group P.C.
635 Butterfield Road
Suite 145
Oakbrook Terrace, Illinois 60181

      Re:    *Mokkapat v. Greenscape*
             USDC No. 1:19-cv-00228

Dear Mr. Barone:

     In response to your Letter written pursuant to Rule 11, I did not receive any Email or documents from you dated August 9, 2019, though I did locate your response of May 13, 2019. If you have a printout of your Email to me on August 9, 2019, please send it to me immediately. I did not receive any email from you on that date.

     Based on reading your materials, I am willing to withdraw any reference to a complete lack of discovery by your clients to substitute the statement that the Lusk defendants provided an initial discovery response but significant failures of those defendants to respond remain. Though you technically did answer some discovery and provide some documents, there are several issues, as follows:

     (A).    Your Letter is incomplete in paragraph 2. You failed to deny that Lusk Law LLC and Michael P. Lusk received payments from the closings performed for the enterprise, Greenscape Homes – KPN LLC. This renders the statement evasive. Further, your clients played a major role in the real estate transactions for the enterprise as shown by your document production. Therefore, some payments were received by the Lusk defendants. Please provide these details of payments for the subject time period of January 2014 through December 2019.

     (B)    Your Privilege Log excludes critical emails that would provide further details of the predicate acts of wire fraud. For example, the following items were completely withheld:

             Lusk Privileged 1
             Lusk Privileged 2
             Lusk Privileged 3



EXHIBIT
G

> Lusk Privileged 4
> Lusk Privileged 5
> Lusk Privileged 6-7
> Lusk Privileged 8

We are willing to engage in a protective order if you will submit a draft to review so you can provide these materials.

(C)     You redacted critical emails that will show communications with Kathy Washko regarding the subject property on or about October 26, 2017:

> Lusk 64
> Lusk 65
> Lusk 66
> Lusk 69
> Lusk 70
> Lusk 79
> Lusk 82
> Lusk 90
> Lusk 92
> Lusk 99

Please provide the draft Protective Order and then submit the unredacted materials to us.

(D)     Your document production shows extensive involvement by the Lusk defendants in the acquisition, construction and marketing end of the real estate enterprise.     This is corroborated by your answers to interrogatories which admit extensive involvement with the preparation of documents for the real estate closings, though your clients may not have personally attended. I call your attention to Answers Nos. 6, 7 and 10 which show your clients were involved with document preparation for the enterprise.  However, you failed to provide any emails that would have been necessary to transmit these materials.  Please provide those materials immediately.

My review is continuing and I hope to be able to continue these discussions with you.

Sincerely,

/s/     Paul Caghan

PC/ms

2



**Barone
Law Group
P.C.**

635 Butterfield Road Suite 145
Oakbrook Terrace, IL 60181
**630.472.0037**
Fax: 630.472.0864
baronelawgroup.com

February 4, 2020

<u>**VIA EMAIL & REGULAR MAIL**</u>
Paul Caghan
Law Office of Paul Caghan LLC
300 North LaSalle St., Suite 4925
Chicago, IL 60654
caghan@ameritech.net

RE:    *Prabhas Mokkapat v. Greenscape Homes, LLC, et al.*
        Case No. 19-cv-00228

Dear Paul:

We are in receipt of your letter dated January 29, 2020. Please find attached to this letter the e-mail sent to you on August 9, 2019 which again included Lusk Law, LLC's and Michael P. Lusk's (collectively "Lusk Law") responses to written discovery. Turning to the substance of your January 29, 2020 letter, we refute that there were "significantly failures" in Lusk Law's response to Plaintiff's written discovery. We note that you have never sent a correspondence concerning Lusk Law's alleged failure to comply with written discovery, despite being in possession of Lusk Law's discovery responses for nine (9) months. In addition, Plaintiff has never filed a Motion to Compel any discovery from Lusk Law in this matter. In fact, the only occasion on which Plaintiff had raised any issues with Lusk Law's responses to written discovery prior to your January 29, 2020 letter was in Plaintiff's Responses to Defendants' Motions to Dismiss. Again, we note that your statements contained therein have no basis in fact.

With regard to paragraph (A) of your letter, you have failed to identify any specific interrogatory or request to produce to which Lusk Law provided an "evasive" statement. In Interrogatory No. 5 Plaintiff asked for amounts paid to Lusk Law as attorneys' fees from closings for Greenscape Homes – KPN, LLC from January 1, 2014 through April 1, 2019. Lusk Law answered "No" which would equate to "None." Lusk Law provided a similar answer to Interrogatory Nos. 9, 13, 17, 21 & 25. There is nothing "evasive" about these answers, aside that they do not support Plaintiff's theory. Moreover, your assertion that Lusk Law "played a major role in the real estate transactions for the enterprise" is simply false. If you would review Lusk Law's Answers to Interrogatory Nos. 5, 9, 13, 17, 21 & 25 you would discern that Lusk Law had no role in any of the Greenscape defendants' home sales. Simply put, there are no documents to produce because they simply do not exist. Again, pursuant to Fed. R. Civ. P. 11, you are directed to amend your Response filed with the Court.

With regards to paragraphs (B) & (C) of your letter, you state that Lusk Law has "exclude[d] critical emails that would provide further details of the predicate acts of wire fraud" by withholding documents based on attorney-client privilege. You ask that we provide you a "Protective Order" to resolve the privilege issue and send you unredacted copies of these documents. Your assertion is baseless and the course of action you suggest is inappropriate. As you are well aware, the attorney-client privilege belongs to the client, not the attorney. *See, e.g.,*



EXHIBIT
H

February 4, 2020
Mr. Paul Caghan
Page 2 of 2

*Illinois v. Radojcic*, 2013 IL 114197, ¶39. Lusk Law cannot unilaterally waive its clients' privilege. *See id.*

You have been provided with a Privilege Log that complies with Fed. R. Civ. P. 26(b)(5) and Seventh Circuit case law. We will not submit any materials withheld based on attorney-client privilege or attorney work-product privilege until directed by the Court as my client has no right to do so. Also, we note that Lusk Law's Privilege Log was sent along with its discovery responses nine (9) months ago and you have never posed any question concerning the invocation of attorney-client privilege until now.

With regards to paragraph (D) of your letter, you state that Lusk Law's "answers to interrogatories ... admit extensive involvement with the preparation of documents for the real estate closings..." In fact, Lusk Law was not involved with Greenscape's real estate closings as evidenced by Lusk Law's Answers to Interrogatory Nos. 5, 9, 13, 17, 21 & 25. The sole involvement concerned Lusk Law's preparation of quit claim deeds and PTAX Declarations as part of an intercompany transfer. Your assertion that Lusk Law was involved in Greenscape's real estate closings is simply false. Your repetition of these frivolous and false allegations must cease.

Again, I have warned you on three (3) separate occasions regarding the frivolous nature of this action and your continued false statements in pleadings and responses. There are no materials in Lusk Law's possession and control to produce. Should you wish to discuss this further pursuant to Fed. R. Civ. P. 37 and N.D. Ill. LR 37.2, I am available for a teleconference.

Kind Regards,

Anthony G. Barone

AGB.dh
Enc.

**Diana Hart**

| | |
|---|---|
| **From:** | Anthony Barone |
| **Sent:** | Friday, August 09, 2019 1:42 PM |
| **To:** | Paul Caghan |
| **Cc:** | Diana Hart |
| **Subject:** | Mokkapat v. Greenscape, No. 18 L 9016 |
| **Attachments:** | 2019 04 29 Lusk Production of Documents.pdf; 2019 04 29 Lusk's Answers to Plaintiff's Interrogatories.pdf; 2019 04 29 Lusk's Response to Plaintiff's Request for Production.pdf; 2019 04 29 Lusk Privilege Log.pdf |

Paul:

Per our conversation in court yesterday, attached please find Lusk Law's discovery responses. Please note that they were also attached to our Reply in Support of the Motion to Dismiss. As you can see, my clients did no residential closings for the Defendants. Please call me after you have had a chance to review.

**Anthony G. Barone**
**17W635 Butterfield Road, Ste. 145**
**Oakbrook Terrace, IL 60181**
**Phn: (630) 472-0037**
**Fax: (630) 472-0864**
http://BaroneLawGroup.com



1



**Barone**
**Law Group**
P.C.

635 Butterfield Road Suite 145
Oakbrook Terrace, IL 60181
**630.472.0037**
Fax: 630.472.0864
baronelawgroup.com

July 15, 2020

**VIA EMAIL & REGULAR MAIL**
Paul Caghan
Law Office of Paul Caghan
444 West Lake Street, 17th Floor
Chicago, IL 60606
Caghan1@comcast.net

      RE:    *Prabhas Mokkapat v. Greenscape Homes, LLC, et al.*
              Case No. 19-cv-00228

Dear Paul:

It is not generally my practice to write letters to opposing counsel threatening sanctions pursuant to Fed. R. Civ. P. 11 ("Rule 11"). In over thirty (30) years of practice, I have been required to on only a handful of occasions. Prior to this case, I have never been required to send three (3) separate Rule 11 letters to an opposing counsel in one matter, let alone a fourth. On January 13, 2020, I wrote a third letter to you in this matter pursuant to Rule 11 concerning the numerous false statements made in your client's "Response to Pending Motions to Dismiss." We have reviewed your "Plaintiff's Reply in Support of Motion for Leave to File Second Amended Complaint" ("Response") filed on July 14, 2020 and I again write to you concerning your repeated false statements made in pleadings in this matter pursuant to Rule 11. Not only have you made a number of very specific allegations against my client that have absolutely no basis in fact, but you have again tried to deceive the Court by claiming my clients have failed to answer discovery.

In this regard, on page 5 of your Response, you state that Lusk Law, LLC "engaged in at least 5 predicate acts of wire fraud and had organizational responsibilities for the racketeering enterprise." You continue by asserting that "The Lusk defendants' control over the racketeering enterprise, Greenscape Homes – KPN, LLC, is established by the fact that the attorney Michael Lusk agreed to participate in the false appraisal scheme, instructed Kathleen Washko to send the communications designed to defraud plaintiff, forwarded the false appraisals and received payments from plaintiff's funds." *Id.*

Your statement that they have "engaged in at least 5 predicate acts of wire fraud" is simply without any basis in fact. The Lusk Law Defendants have answered your discovery served in this matter and have produced all documents in their possession and control regarding your client's failed real estate transaction. You were already placed on notice by my March 4, 2019 and January 13, 2020 letters that my clients had no part of these transactions and had never represented any of the Defendants in connection with any real estate transaction. Yet, you still chose to reassert these baseless allegations as facts in your Response.

Moreover, your claim that Michael Lusk "agreed to participate in the false appraisal scheme" is equally baseless. Not one communication from my client contained the term appraisal, or any related terms. Your repetition of these baseless allegations must cease.

EXHIBIT
I

July 15, 2020
Mr. Paul Caghan
Page 2 of 3

In addition, you claim that "Defendants failed and refused to produce documents showing the appraisals, emails between the individual defendants, emails to and from defendants' primary lending companies, payments to appraisers at closings, and payments to attorneys." Response at p. 7. On page 9 of the Response you stated, "[w]ithout releasing significant discoverable material, Defendants ask the Court to conclude that the allegations of the SAC are farfetched."

You have made the same baseless claims that my clients have failed to answer discovery before and I have previously written to you to cease. As noted in the Lusk Law Defendants Reply in Support of the Motion to Dismiss the Second Amended Complaint, Lusk Law, LLC and Michael P. Lusk answered written discovery on April 29, 2019 fully and completely. You have never moved to compel any documents from my clients, despite Judge Blakey's admonition during the January 30, 2020 hearing.

Finally, you continue to assert that "Defendants have withheld and objected to additional relevant discovery ... [and] Defendants stood on their objections which stated that all of these items were not relevant." Response at p. 11. You claim that "defendants Michael Lusk and Lusk Law, LLC failed to produce any items subject to the Request for Production served upon them" and "Plaintiff's attorney has no record of receiving any document production nor objections from the attorneys for Michael P. Lusk and Lusk Law, LLC." Response at p. 12. You assert "[t]he attorney-defendants refused to produce documents showing their participation and status in the racketeering enterprise."

Simply put, your statements are demonstrably false. On May 1, 2019, you were served with the Lusk Defendants responses to Plaintiff's written discovery via e-mail. A copy is attached hereto. On May 13, 2019, I wrote to you regarding Plaintiff's false statements in his Response to Lusk Law's Motion to Dismiss wherein you claimed not to have received the Lusk Defendants discovery responses. I attached Lusk Law and Michael P. Lusk's complete and full response to Plaintiff's discovery via electronic mail. A copy of the May 13, 2019 e-mail is attached hereto. On August 9, 2019, I sent you Lusk Law and Michael P. Lusk's complete and full response to Plaintiff's written discovery a third time. A copy of the letter is attached hereto. Lusk Law and Michael P. Lusk's answers to written discovery were also attached to their Reply in Support of their Motion to Dismiss filed on April 29, 2019.

On January 13, 2020, I wrote a Rule 11 Letter to you highlighting the four (4) previous occasions on which you had been served the Lusk Defendants full and complete responses to written discovery. A copy of the letter is attached hereto. On January 29, 2020 you finally responded and admitted that you received the Lusk Law Defendants answers to discovery. A copy is attached hereto.

Despite being served with the Lusk Defendants full and complete responses to written discovery on four (4) occasions, and acknowledging receipt of said responses, you claim in your July 14, 2020 Response not to have received these documents. Your repetition of prior false statements which you have already admitted were false in a prior communication demonstrates your flagrant disregard for the Federal Rules of Civil Procedure. We demand you withdraw Adjudicative Fact #3 immediately and apologize to the Court for your error.

July 15, 2020
Mr. Paul Caghan
Page 3 of 3


      This is now the fourth warning I have provided regarding the frivolous nature of this action and your continued false statements in pleadings and responses. If you do not withdraw the false and misleading statements in Plaintiff's Response filed on July 14, 2020 towards Lusk Law, LLC and Michael P. Lusk within seven (7) days (July 22, 2020), we will file a Rule 11 Motion highlighting the above. Should you have any questions, please call me.

Kind Regards,

Anthony G. Barone

AGB.dh
Enc.

## Jason Jochum

**From:** Paul Caghan <caghan1@comcast.net>
**Sent:** Monday, July 20, 2020 1:24 PM
**To:** Anthony Barone
**Subject:** Mokkapat v. Greenscape

Mr. Barone:

I have reviewed your letter dated February 4, 2020 and it is deficient. You do not get to decide what documents to refuse to provide. I am urging you to produce the following documents to me immediately. As a courtesy, I agreed to enter into a protective order if you want. If you do not feel a protective order is necessary, then it is questionable why you want these documents kept secret.

Also, you did not answer the analysis of your clients' liability outlined in section (D).

As requested on January 29, 2020, and again today in our phone conversations, please produce immediately the following missing documents that you withheld:

Lusk Privileged 1, 2, 3, 4, 5, 6-7 and 8

Lusk 64, 65, 66, 69, 70, 79, 82, 90, 92 and 99.

If you are willing to produce these documents, there can be progress. I look forward to receiving this missing material.

Thank you.


Paul Caghan



# IN THE SUPREME COURT OF IOWA

No. 18–2191

Filed May 10, 2019

Amended July 9, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

      Complainant,

vs.

**PAUL A. CAGHAN,**

      Respondent.

---

      On review of the report of the Iowa Supreme Court Grievance Commission.

      Grievance commission recommends attorney be ordered to cease and desist practicing law in Iowa for one year. **ATTORNEY ORDERED TO CEASE AND DESIST FROM THE PRACTICE OF LAW IN IOWA.**

      Tara van Brederode and Wendell J. Harms, for complainant.

      Paul A. Caghan, Chicago, Illinois, pro se.


EXHIBIT
K

2

**APPEL, Justice.**

In this case, the Iowa Supreme Court Attorney Disciplinary Board (Board) charged an attorney who appeared pro hac vice in Iowa proceedings with violating Iowa Rules of Professional Conduct 32:3.1 (prohibiting lawyer from bringing a frivolous proceeding or controverting a frivolous issue), 32:3.3(a)(1) (prohibiting lawyer from knowingly making or failing to correct false statements of material fact or law to a tribunal), and 32:8.4(d) (prohibiting lawyer from engaging in conduct prejudicial to the administration of justice).

The charges arise out of Iowa litigation in which an out-of-state attorney admitted pro hac vice claimed, among other things, that his clients lacked knowledge of an Iowa foreclosure proceeding and, as a result, could not be precluded from bringing a separate fraud action arising out of the same transaction that gave rise to the foreclosure proceeding. In addition, the attorney supported his fraud action by claiming that his clients were without counsel at a key stage of the negotiations with the bank prior to the institution of the foreclosure. Finally, the attorney asserted that his clients were defrauded by "phony court orders" foisted upon them by the defendants.

After granting summary judgment in the fraud action adverse to the attorney's clients, the district court found the above assertions were made "falsely and in bad faith" in an attempt to avoid the defendants' motion for summary judgment. The district court imposed sanctions of $123,359.60 against the attorney and his clients. The district court also entered a monetary sanction of $2500 against an Iowa attorney serving as local counsel.

Proceedings were instituted by disciplinary authorities. After a hearing, the Iowa Supreme Court Grievance Commission (commission)

found that the Board established the alleged violations of the Iowa Code of Professional Conduct by a convincing preponderance of the evidence and recommended that the court enter an injunction prohibiting the attorney from practicing law in Iowa for at least one year. The commission further recommended that the injunction not be lifted until the sanctions in the matter had been satisfied in full.

For the reasons expressed below, we affirm the commission's findings and conclusions regarding the violations. We conclude that the proper sanction for these violations is an injunction prohibiting the attorney from practicing law within the State of Iowa for six months. We also order that the injunction not be lifted until the attorney demonstrates to the satisfaction of the Board that the sanctions imposed in the fraud case have been satisfied.

## I. Factual and Procedural Background.

**A. Introduction.** Based on our review of the record, we find the following facts. Paul A. Caghan has been licensed as an attorney in Illinois since 1979. At the time of the allegations in this complaint, Caghan maintained an office in Cook County, Illinois.

Caghan has no history of disciplinary action in Iowa. In 1993, however, he was denied admission to the Indiana state bar because of outstanding debts. He was sanctioned in the past by an Ohio court in the amount of $141,475.63 for frivolous conduct and by an Illinois court in the amount of approximately $38,000 for filing a frivolous appeal.

The lender involved in the transaction that gives rise to this proceeding, American Bank and Trust Co., is a Quad Cities bank. Dan Jaros, the bank's chief lending officer, was responsible for the transaction in question. The borrower, RAAJ Corp., is an Iowa corporation. At all times relevant, its registered agent in Iowa was attorney Jack Dane. Kirit

4

Madhiwala is president and a director of RAAJ. Jayprakash Upadhyay is secretary, treasurer and a director of the corporation. Madhiwala and Upadhyay also own RAAJ. Madhiwala and Upadhyay were guarantors on the American Bank and Trust loans.

**B. Negotiation of Forbearance Agreement.** The allegations in the Board's complaint arose out of financing arrangements related to the Bettendorf Ramada Inn. Beginning in 2006, RAAJ borrowed in excess of $3 million from American Bank and Trust to acquire, operate, and renovate the hotel. The loans were secured by real estate mortgages on the hotel and related real estate. The principal shareholders of RAAJ—Madhiwala and Upadhyay—personally guaranteed the loans.

In January 2014, the loans were delinquent. The parties entered into negotiations for a forbearance agreement. In the forbearance negotiations, RAAJ was represented by Dane. Thomas Pastrnak represented the bank.

On March 18, Pastrnak advised Dane that the bank had determined to forbear further collection activities provided certain terms and conditions were met. In order to agree to forbear, the bank required that the borrower agree to a forbearance agreement and a consent order appointing a receiver. Pastrnak sent Dane a set of documents for his review. On March 25, Dane returned executed documents to Pastrnak.

On April 1, Pastrnak wrote Dane regarding the forbearance documents. Some of the documents executed by Dane's clients had blanks that were not completed. Pastrnak asked Dane for his permission to establish March 27, 2014, as the start date and September 27, 2014, as the expiration date of the forbearance agreement. He also asked Dane whether he could write in March 25, 2014, as the date for ordering an appraisal. Finally, with respect to the consent order, Pastrnak told Dane

5

that the bank failed to remove certain language from the first paragraph. Specifically, the bank sought to provide that the consent order would be filed in "an action in equity by American Bank" rather than in "an action in equity by American Bank to foreclose Mortgages given to American Bank by the Borrower." Pastrnak asked whether it was okay to make that change in the consent order without affecting the signature page.

Dane responded to the proposed changes by email on April 1. Dane stated he did not have a problem with the proposed changes and had recommended them to the guarantors of the debt, but he needed their express consent for any changes. He asked Pastrnak to "bear with [him]."

Dane followed up with a subsequent email on April 4 stating, "I have authority from all guarantors to insert the dates requested by American bank." He did not expressly address the question of the changed language in the consent order. Dane did, however, ask Pastrnak to send a fully executed copy of the agreements for him to send to his clients. On April 7, Pastrnak's assistant sent Dane fully executed copies of the documents that included the changed language in the consent order.

**C. Negotiations for Sale, Acceleration of Loan, and Filing of Actions in Illinois and Iowa.** For a period of months during the forbearance period, efforts were made to find a buyer for the hotel property. In July, RAAJ found outside financing that might take over part of the debt. However, the proposed transaction would require the bank to write off $700,000. The bank had no interest in this haircut.

In the fall of 2014, the parties pursued the possibility that Min Jung Kim, known as Steve Kim, and his company, SM Hospitality MGT Inc., might purchase the hotel. The bank's executive committee met several times to consider the outlines of a potential transaction, and in September, the bank provided a commitment letter outlining the terms of a transaction

that the bank would be willing to consider. The forbearance agreement was set to expire, however, on September 27, and the bank elected not to extend it beyond September 30.

On October 2, 2014, Dane sent an email to Pastrnak stating that he believed the bank had a deal for SM Hospitality to assume the RAAJ obligation and asking for details. Pastrnak responded with an email on October 8. The October 8 email discussed a potential transaction with Kim and SM Hospitality and provided some draft documents. Pastrnak emphasized that the bank had not yet reviewed the documents and that they were subject to revision. The documents included a management agreement and a purchase and sale agreement. Pastrnak stated, "Hopefully, I'll have the financing documents ready by the end of this week, but American Bank would like to have the buyer begin management while we await comments to the Agreements as well as the financing documents when circulated."

On October 15 and 16, Pastrnak's colleague, Troy Venner, exchanged emails with Dane related to the potential transaction. On October 15, Dane asked Venner for the purchase price and how the proceeds of any sale would be applied. On October 16, Venner provided the information which showed that the seller would be responsible for a deficiency obligation of $49,009. Dane responded that day with the declaration that "[t]he sellers will not agree to a deficiency."

The transaction became further clouded when, on October 20, Dane provided a signed management agreement for SM Hospitality to take over operations of the hotel but made it subject to an addendum. The bank rejected the terms of the addendum.

On November 21, the bank decided to press for resolution by issuing a notice of acceleration on the loans based upon alleged defaults.

7

According to Pastrnak, the bank was trying to mix everything up to get a deal. On November 25, Dane sent an email to Venner acknowledging acceleration of the loans and stating that he did not understand what was going on. Dane sought further information about the status of the potential transaction, raised questions about a debit of $50,000 from the RAAJ account, and stated,

> It is our understanding that Mr. Kim assumed control of the hotel at the direction of Mr. Jaros [a bank officer responsible for the credit line], that Jay and Frank were kicked out with the knowledge and consent of Mr. Jaros, and fund belonging to Raaj were seized by either Mr. Kim or the bank and some were sent back for reissue.

Dane further declared, "[I]t is our position that the bank has failed to honor its commitments and has acted beyond its authority."

Venner's same-day response was an attempt to set up a meeting for the following week. On December 2, Dane told Venner that his clients wanted to attend and asked if Jaros could attend as well.

On December 1, however, RAAJ and its owners filed an action against the bank and various individuals in Cook County, Illinois, alleging fraud. The plaintiffs in the Illinois fraud action were represented by Caghan. The bank called off any further meetings in light of the Illinois fraud action.

The bank's next action was to file a foreclosure action in Scott County, Iowa, on December 26, 2014. The bank also requested the appointment of a receiver and alleged that RAAJ and its guarantors had consented to the appointment of a receiver in a prior forbearance agreement. Finally, the bank requested the court set a hearing on the application for the appointment of a receiver. The court granted the application and set a hearing for January 29, 2015.

8

**D. Prosecution of Scott County Foreclosure Action and Dismissal of Illinois Fraud Action.** Pastrnak and Venner represented the bank in the Scott County foreclosure action. Dane, however, told Venner that he did not know whether he would be representing RAAJ and the guarantors in the foreclosure action. He did not file an appearance on their behalf in the foreclosure action.

The bank served the original notice, foreclosure petition, application for the appointment of a receiver, and order setting a hearing on Dane, who was the registered agent for RAAJ, on December 31, 2014. On January 8, 2015, the bank served the Scott County foreclosure documents on Madhiwala by serving his wife at an address in Skokie, Illinois. On January 12, the bank served the documents on Upadhyay by serving his daughter-in-law at an address in Winthrop Harbor, Illinois.

The January 29 hearing proceeded as scheduled. The district court appointed a receiver for the property. Neither RAAJ, Madhiwala, nor Upadhyay appeared either personally or through counsel. Jill Dykes, an assistant for the Pastrnak firm, served copies of the order by U.S. mail on Dane, Caghan, Madhiwala, and Upadhyay. No mail was returned undelivered.

After having initiated the Scott County foreclosure proceedings and obtained the appointment of Kim as receiver, the bank turned to address the Illinois fraud action filed by Caghan on behalf of RAAJ and its guarantors. The bank filed a motion to dismiss or to transfer, specifically alleging the Scott County foreclosure action brought by the bank against RAAJ and the guarantors. In support of the motion, the bank filed an affidavit by Jaros, the bank's chief lending officer, averring among other things that "a Petition in Foreclosure was filed on behalf of [the bank] in Scott County, Iowa, on December 26, 2014."

9

In response to the bank's motion to dismiss the Illinois fraud action, Caghan filed documents in the Illinois fraud action, including an affidavit from Madhiwala. Madhiwala stated, under oath, "My lawsuit against [the bank] was filed on December 1, 2014, which was prior to the Iowa lawsuit being filed by [the bank]." The affidavit thus asserted that RAAJ, Madhiwala, and Upadhyay had won the race to the courthouse.

Further, the Madhiwala affidavit explicitly attacked the Jaros affidavit filed in the Illinois action. The Madhiwala affidavit asserted that a statement made by Jaros regarding prior negotiations "in his affidavit is erroneous and mistaken." The Madhiwala affidavit thus shows familiarity with the Jaros affidavit. As noted, the Jaros affidavit recited facts about the filing of the Scott County foreclosure action.

On April 2, the bank filed a motion for summary judgment in the Scott County foreclosure action. The Pastrnak firm sent copies of the motion by U.S. mail to Dane, Caghan, Madhiwala, and Upadhyay. No mail was returned undelivered. No one, however, appeared on behalf of RAAJ, Madhiwala, or Upadhyay.

On April 20, the district court granted the bank summary judgment in the Scott County foreclosure matter. The court found that each of the defendants had been served in accordance with the rules of civil procedure and that it had in personam jurisdiction over RAAJ, Madhiwala, and Upadhyay. The Pastrnak firm provided copies by U.S. mail to Dane, Caghan, Madhiwala, and Upadhyay. No mail was returned undelivered.

On September 11, 2015, the bank filed an affidavit of protective advances in the Scott County foreclosure action. Once again, the Pastrnak firm provided copies by U.S. mail to Dane, Caghan, Madhiwala, and Upadhyay. No mail was returned.

10

After the bank bought the property at the resulting sheriff's sale and on September 15, the sheriff issued a deed conveying the hotel property to the bank. On January 11, 2016, the bank filed a motion to discharge the receiver, and on January 12, 2016, the bank filed a motion for confirmation of deficiency judgment. The Pastrnak firm provided copies of the January 11 and 12 documents to Dane, Caghan, Madhiwala, and Upadhyay by U.S. mail without any return from the post office.

The bank was also successful in the Illinois fraud action. The Illinois court dismissed the lawsuit and directed the plaintiffs to refile it in Scott County, Iowa, within six months of the entry of the order of dismissal.

**E. The Filing of Scott County Fraud Action and the Bank's Defense of Issue Preclusion Arising Out of the Scott County Foreclosure Action.** RAAJ and the guarantors filed a fraud action in Scott County, Iowa, on November 4, 2015. The original lawyer in the action was an Iowa attorney, Larry Thorson. The lawsuit alleged that the bank induced the plaintiffs "with false agreements, phony court orders and misrepresentations" and "used the plaintiffs as a mere business conduit, instrument and tool solely for its own objective, benefit, and advantage, to the detriment of the plaintiffs." An amended pleading claimed that the false documents included a "purported Consent Order" and a "supposed Management Agreement."

The bank filed a motion to dismiss the action, arguing that the petition was too vague to provide fair notice of the claims. The district court denied the motion to dismiss, stating that the pleading was sufficient. The bank responded with an answer and affirmative defenses that included the assertion that "[r]es judicata, or claim preclusion, bars the Plaintiffs' claim which could have been fully and fairly adjudicated in [the Scott County foreclosure action]."

11

In the initial disclosures in the Scott County fraud case, the RAAJ plaintiffs identified various documents in the Scott County foreclosure action, including the original notice and application for a receiver, as documents that may form the basis of testimony or expert opinions at trial. The bank also identified various pleadings related to the Scott County foreclosure action in its initial disclosures. RAAJ lawyer Thorson was familiar with the initial disclosures in the Scott County fraud case.

On May 27, 2016, Caghan applied for permission to represent the RAAJ plaintiffs pro hac vice in the Scott County fraud case. Although Caghan disclosed unfavorable facts in his application regarding the denial of admission to the Indiana bar and sanctions levied against him in Ohio and Illinois courts, the bank did not resist the application. The district court granted the application on June 13.

On July 2, Caghan sent the bank an exhibit list. The list identified various filings in the Scott County foreclosure action.

The RAAJ plaintiffs answered interrogatories and a request for document production in the Scott County fraud case. The interrogatory answers and the response to the request for production both identified various filings in the foreclosure case as trial exhibits. Madhiwala and Upadhyay were identified as providing or assisting the answers to interrogatories and signed verifications stating that the answers were true and correct.

On November 9, the bank filed a motion for summary judgment in the Scott County fraud case claiming, among other things, that the RAAJ plaintiffs' fraud claim was barred by claim preclusion. The bank took the depositions of Madhiwala and Upadhyay during the pendency of the summary judgment motion on November 22 and 29. Madhiwala and Upadhyay testified that, prior to their depositions, they had never heard of

12

the Scott County foreclosure action. This testimony led to vigorous postdeposition discussion between counsel for the bank and Caghan.

On December 5, the RAAJ plaintiffs filed a resistance to the bank's motion for summary judgment. The RAAJ plaintiffs claimed that Dane was not their lawyer after October 9, 2014, and that they were never served in the Scott County foreclosure action. Madhiwala and Upadhyay again claimed that they were not aware of the Scott County foreclosure action until their depositions were taken on November 22 and 29, 2016.

**F. Bank's Motion for Sanctions in Scott County Fraud Action.**
In response to the RAAJ plaintiffs' filings resisting summary judgment, the bank filed a motion for sanctions against Caghan and the RAAJ plaintiffs in connection with the filings. The motion for sanctions covered four discrete subject areas.

First, the bank sought sanctions against Caghan for claiming that the RAAJ plaintiffs had no knowledge of the Scott County foreclosure action. The bank characterized the RAAJ plaintiffs' position that they were unaware of the Scott County foreclosure action prior to November 2016 as "a ridiculous, desperate and bad faith attempt to resist [the bank's] claim preclusion argument." The bank claimed that there were at least sixteen instances where the RAAJ plaintiffs would have learned, either directly or through counsel, that the bank had filed the Scott County foreclosure action. The bank attached to its sanction motion various exhibits that the bank claimed demonstrated the RAAJ plaintiffs had knowledge of the Scott County foreclosure action.

Second, the bank sought sanctions against Caghan for "claiming inadequate and/or non-existent service of process" on his clients in the Scott County foreclosure action. The bank presented the court with an email from Dane dated December 7, 2016, in which he confirmed that he

13

had been served on December 31, 2014, with papers related to the Scott County foreclosure action. The bank also submitted affidavits of process servers detailing their efforts to serve process on the guarantors by service to family members at known addresses.

Third, the bank urged the court to impose sanctions on Caghan for claiming that the consent order was somehow forced on the RAAJ plaintiffs in October 2014 as part of an alleged fraud when, in fact, the consent order was part of the March 2014 forbearance agreement. The bank submitted both (i) excerpts of Madhiwala's deposition in which he agreed that he signed the consent order in March 2014 and (ii) various correspondence related to the negotiation of the forbearance agreement.

Fourth, the bank sought sanctions on Caghan for claiming that Dane was not the attorney for the RAAJ plaintiffs after October 9, 2014. The bank attached various correspondence between the bank and Dane in December 2014 regarding negotiations with the bank on behalf of the RAAJ plaintiffs. The bank also attached an excerpt of Madhiwala's deposition in which he testified that Dane continued to represent the RAAJ plaintiffs until December 2014.

Caghan resisted the motion for sanctions. He claimed that there was overwhelming evidence that the RAAJ plaintiffs had no knowledge of the Scott County foreclosure action until the November 2016 depositions were taken. Caghan also repeated his claims that service was not effective on RAAJ, Madhiwala, or Upadhyay. Caghan further reiterated his claim that the evidence supported each element of fraud. Finally, Caghan argued that lawyer Dane did not represent RAAJ after October 9, 2014.

**G. District Court Grants Bank's Motion for Summary Judgment in the Scott County Fraud Action Against RAAJ Plaintiffs.** In January 2017, the district court granted the bank's motion for summary judgment

14

in the Scott County fraud action. The district court found that the RAAJ plaintiffs were precluded from bringing the fraud action because they failed to raise their claims in the foreclosure action.

Notwithstanding the issue preclusion ruling, the district court addressed the RAAJ plaintiffs' allegations of fraud. As to the allegations of fraud, the district court concluded,

> There is simply no evidence in the summary judgment record to support a reasonable inference for a finding that [the bank] knowingly made a false representation to Plaintiffs with the intent to deceive Plaintiffs in order to dispossess Plaintiffs of the Hotel.

The district court specifically rejected the RAAJ plaintiffs' phony court orders theory, concluding that there was no evidence that the consent order, signed in March 2014 as part of the forbearance agreement, was used by the bank to trick the plaintiffs in October 2014 into giving up possession of their hotel. The district court rejected other assertions concerning fraud raised by the RAAJ plaintiffs.

**H. District Court Ruling on Bank's Motion for Sanctions.** In February 2017, the district court entered an order on sanctions. The district court analyzed Caghan's conduct under Iowa Rules of Civil Procedure 1.981(7) (concerning affidavits presented in bad faith or solely for purpose of delay) and 1.413(1) (stating that counsel's signature is a representation that pleading is well founded in fact and law).

The district court found that the assertions by Caghan in resistance to the motion for summary judgment suggesting that the RAAJ plaintiffs were not aware of the Scott County foreclosure action were directly contradicted by communications sent by counsel for the bank and by references to the foreclosure action in the plaintiffs' own documents. As a

15

result, the court concluded that sanctions were appropriate for this factual assertion.

The district court next considered the claim that the bank created phony court documents. Such claims, according to the district court, were untenable and fabricated in order to sustain the RAAJ plaintiffs' cause of action.

The district court further found that there was no reliable evidence that Dane's representation of the RAAJ plaintiffs ended in October 2014. The court said, "Plaintiffs offer no evidence of termination of Dane's engagement or objection to his continued representation on their behalf after October 9, 2014."

On February 25, Caghan filed a resistance claiming that the district court could not enter sanctions or set any other hearing dates after the district court granted the bank's motion for summary judgment. The bank, citing *Board of Water Works Trustees v. City of Des Moines*, 469 N.W.2d 700, 702 (Iowa 1991), replied. The bank also provided the district court with a letter it received from Upadhyay and Madhiwala on March 16. In the letter, Upadhyay and Madhiwala declared, "We never understood [Caghan's] explanation or reasoning" and "[W]e should have known better that our attorney's assertion of fraud was a[n] extremist explanation of what should have been a reasonable defense."

The district court held a hearing on April 19 to consider the question of what sanctions should be imposed. Madhiwala, Upadhyay, and Thorson attended, while Caghan did not.

On April 28, the district court entered sanctions against Caghan, Upadhyay, and Madhiwala in the amount of $123,359.60, the cost of the bank's defense of the two fraud lawsuits. The district court declared that Madhiwala and Upadhyay "were willing stooges in executing the false,

16

misleading and wrongful statements of fact asserted by them and through their attorney, Paul Caghan." The district court concluded that it was "fully satisfied [Caghan] conspired with his clients to make false statements of fact for the purpose of misleading the tribunal."

The RAAJ plaintiffs did not appeal the district court ruling granting the bank's motion for summary judgment in the Scott County fraud claim. Further, neither Caghan, Madhiwala, nor Upadhyay appealed the district court order on sanctions.

## II. Proceedings Before the Commission.

**A. Introduction.** On April 27, 2018, the Board filed a complaint against Caghan. In the complaint, the Board alleged that Caghan in his representation of the RAAJ plaintiffs violated Iowa Rules of Professional Conduct 32:3.1, 32:3.3(a)(1), and 32:8.4(d).

The commission held a hearing on the matter on August 27–28. The Board admitted numerous exhibits by consent. The Board called Pastrnak, Venner, attorney Jonathon Fox, and Iowa District Court Judge Stuart Werling as witnesses. Caghan appeared pro se but did not call any witnesses.

**B. Ethical Violations.** After hearing the evidence, the commission found that the Board proved by a convincing preponderance of the evidence all three charges against Caghan. The commission found that there was no factual basis for Caghan's repeated assertions that the RAAJ guarantors had no knowledge of the Scott County foreclosure action before November 2016. The commission also found that there was no factual basis for the assertion made by Caghan that the consent order was signed in October 2014 when in fact it had been signed as part of a forbearance agreement in March 2014. The commission concluded that Caghan violated rule 32:3.1 by making bad faith assertions regarding his clients'

17

lack of knowledge of the Scott County foreclosure action and the allegedly fraudulent nature of the consent order that was negotiated as part of the forbearance agreement. The commission also concluded that Caghan violated rule 32:3.3(a)(1) because he "knowingly" made these false assertions. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 150 (Iowa 2018).

Finally, the commission concluded that Caghan violated rule 32:8.4(d) by engaging in conduct prejudicial to the administration of justice. The commission concluded that Caghan's conduct impeded the efficient operation of the courts by wasting judicial resources on meritless claims. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463 (Iowa 2014).

**C. Sanctions.** The commission considered both aggravating and mitigating factors in considering the proper sanction. As aggravating factors, the commission found that Caghan had prior similar disciplinary offenses. The commission also found that Caghan had refused to acknowledge even the possibility of wrongful conduct. In addition, the commission concluded that Caghan's answers and affirmative defenses suggested that he did not intend to pay the sanctions that had been levied against him.

Because of the nature of the offenses and the aggravating factors, the commission recommended that Caghan be enjoined from the practice of law in the State of Iowa for one year. The commission further recommended that any lifting of the injunction should be contingent upon satisfaction of the outstanding sanctions imposed by the district court in this case.

18

### III.  Standard of Review.

"Our review of attorney disciplinary proceedings is de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009).  While we give respectful consideration to the findings of the commission, we are not bound by them.  *McGinness*, 844 N.W.2d at 461. The Board must prove alleged violations of disciplinary rules by a convincing preponderance of the evidence.  *Id.*

### IV.  Discussion.

**A.  Introduction.**  We begin our task by a review of the record in this case to determine whether the Board proved by a convincing preponderance of the evidence that Caghan committed the ethical violations as alleged by the Board.  If we determine that ethical violations occurred, we then proceed to consider the appropriate sanction.

**B.  Ethical Violations.**

1.  *Iowa Rule of Professional Conduct 32:3.1.*  The Board alleges violations of rule 32:3.1.  The rule states, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."  Iowa R. Prof'l Conduct 32:3.1.

In reviewing the record, we recognize that an attorney is not subject to sanctions for merely making factual assertions or legal arguments that ultimately are unsuccessful.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sporer*, 897 N.W.2d 69, 86 (Iowa 2017).  We expect zealous advocacy from our lawyers.  Indeed, our adversary system of justice depends upon it.  Yet our system also depends upon attorneys not gaming the system through the assertion of law or facts that the attorney knows are unsupportable.  As noted in comment 1 to rule 32:3.1,

19

> The advocate has a duty to use legal procedure for the fullest
> benefit of the client's cause, but also a duty not to abuse legal
> procedure. The law, both procedural and substantive,
> establishes the limits within which an advocate may proceed.

Iowa R. Prof'l Conduct 32:3.1 cmt. [1].

Several of our cases develop the contours of rule 32:3.1. In *Iowa Supreme Court Attorney Disciplinary Board v. Barnhill*, 885 N.W.2d 408, 414, 420 (Iowa 2016), we considered a case in which a lawyer claimed in an action brought by a client to enforce a fee arbitration award that she had reimbursed the client for the excessive fee. In fact, the lawyer had not done so. *Id.* at 414. The lawyer, of course, had personal knowledge that the amount had not been paid. *Id.* Further, the lawyer knew that her counterclaim for abuse of process was totally without merit as the lawyer had not satisfied the fee arbitration award and the adverse client's action to enforce the arbitration award was entirely justified. *Id.* at 420. We found a violation of rule 32:3.1 in this case. *Id.*

We also found a violation of rule 32:3.1 in *Sporer*, 897 N.W.2d at 85–86. In *Sporer*, an attorney testified that it was "unfathomable" to him that a legal secretary who arrived at his office to pick up papers associated with a divorce did not have authority to bind a client. *Id.* at 73, 85. We found that this remarkable assertion was a violation of rule 32:3.1. *Id.* at 86.

More recently, in *Turner*, 918 N.W.2d at 150, we considered whether an attorney violated rule 32:3.1 by filing baseless or frivolous pleadings during his representation of bankruptcy clients. The attorney's pleadings omitted required information, contained inaccurate information, and lacked client authorization. *Id.* at 136–38. We found the attorney's actions violated the rule. *Id.* at 150.

We now turn to the question of whether Caghan violated rule 32:3.1 by advancing the notion that his clients did not know about the underlying

20

foreclosure action. After the bank filed its motion for summary judgment in the Scott County fraud action urging application of claim preclusion, Madhiwala and Upadhyay filed affidavits and provided testimony claiming that they had no knowledge of the foreclosure action until November 2016 when their depositions were taken by the bank. Caghan sought to use this testimony to defeat application of claim preclusion arising out of the Scott County foreclosure action.

Ordinarily, when a client claims knowledge of certain facts, a lawyer is not required to function as judge and jury regarding credibility issues. But here, we are convinced that Caghan must have known that the testimony was simply not true. Under all of the facts and circumstances, it seems impossible that these sophisticated businessmen had no idea that the bank had commenced a foreclosure proceeding in Iowa. We come to this conclusion not because of one single circumstance that arouses suspicion that Madhiwala and Upadhyay may be lying, but on at least eight significant factors that compel the conclusion that they must have known about the underlying Scott County foreclosure action.

First, Dane, RAAJ's lawyer in negotiations with the bank, was personally served with the papers as registered agent for RAAJ on December 31, 2014. Madhiwala is president and a director of RAAJ, and Upadhyay is secretary, treasurer, and a director of the corporation. It strains credulity to believe that lawyer and registered agent Dane, after having been served with the papers related to the Scott County foreclosure action filed by the bank, did not advise the RAAJ principals about it.

Second, while there might be an argument that the bank did not successfully achieve service of the foreclosure action papers on Madhiwala and Upadhyay, the service was nevertheless of a character likely to inform them of the pending action. With respect to Madhiwala, a process server

21

served the papers on Madhiwala's wife at an address in Skokie that no one claims was not Madhiwala's home or residence. Caghan argued that the service was ineffective for lack of compliance with Illinois law, which Caghan asserts requires first class mail as part of service, but this legal question is beside the point for purposes of this disciplinary proceeding. The point here is that it seems very unlikely that Madhiwala's wife, after being served with papers related to the Scott County foreclosure action, would not have given Madhiwala the papers which were served that related to the hotel property which formed the basis of his livelihood.

As to Upadhyay, substituted service was achieved on his daughter-in-law at a motel in Windsor Heights, Illinois. Caghan asserted that this service was ineffective because Upadhyay did not reside at the motel but instead lived in a separate structure owned by the motel but not physically attached to the main structure. Perhaps the substituted service could be challenged under Iowa law for failure to achieve it at the home or place of abode of the person being served. But once again, that is not the question here. The question is whether Upadhyay would not have received the legal documents served on his daughter-in-law under the circumstances. That seems unlikely.

Third, in the Illinois fraud action, Madhiwala filed an affidavit after the bank moved to dismiss the case. In the affidavit, Madhiwala stated, "My lawsuit against [the bank] was filed on December 1, 2014, which was prior to the Iowa lawsuit being filed by [the bank]." The only action filed by the bank in Iowa related to Madhiwala was the Scott County foreclosure action. Further, in the affidavit, Madhiwala attacks an affidavit provided by Dan Jaros as containing inaccurate information. The Jaros affidavit, with which Madhiwala was apparently familiar, included narrative about the filing of the Scott County foreclosure. And, of course, Caghan was

22

representing Madhiwala and RAAJ in the Illinois fraud action, and we may thus presume his familiarity with Madhiwala's affidavit filed therein.

Fourth, Caghan was obviously fully aware of the Scott County foreclosure proceeding even though he may not have made an appearance in the proceeding itself. After Caghan filed the Illinois fraud action, the bank sent Caghan a courtesy copy of filings related to the Scott County foreclosure at his office by U.S. mail. It seems extremely unlikely that Caghan would not have discussed with his sophisticated business clients the Iowa filings and the relationship between the filings and the Illinois fraud action.

Further, the pleadings and discovery associated with the Illinois fraud action demonstrate that Caghan was well aware of the Scott County foreclosure proceedings. The plaintiffs' August 10, 2016 exhibit list in the fraud action identified documents previously filed in the Scott County foreclosure action. Additionally, the interrogatory answers identifying the Scott County foreclosure documents were verified as "true and complete" by Madhiwala and Upadhyay.

Fifth, events early in the Scott County fraud litigation suggest that Madhiwala and Upadhyay must have known about the Scott County foreclosure proceedings. The Scott County fraud action was filed by an Iowa lawyer, Larry Thorson. In initial disclosures in the case, Thorson, on behalf of his clients, identified documents related to the Scott County foreclosure proceeding as relevant to the fraud action. In assembling the disclosures, it is difficult to see how attorney Thorson would have not had communications with his clients about documents related to their claims.

Sixth, in June 2016, Caghan entered the Scott County fraud case as counsel for Madhiwala and Upadhyay. Again, Caghan was aware of the Scott County foreclosure action. Further, in the Scott County fraud

23

action, the plaintiffs hired two experts who generated reports that stated they had reviewed documents connected with the foreclosure action. Madhiwala and Upadhyay verified interrogatories describing the testimony of these experts.

Seventh, Madhiwala and Upadhyay each received a blizzard of documents by U.S. mail related to the foreclosure action. The mail was sent to Madhiwala's residence and, in the case of Upadhyay, to a motel where he received mail. None of the mail was returned as undeliverable. It may be questionable whether one, two, or even three pieces of U.S. mail actually get through to a party, and U.S. mail alone may be insufficient to support service of process. But the frequency of documents related to the foreclosure action sent on at least six separate occasions by the bank's representatives by U.S. mail to addresses where Madhiwala and Upadhyay receive mail makes it unlikely that they did not know about the foreclosure action.

Eighth, Madhiwala and Upadhyay attended the district court's hearing related to what sanctions should be imposed in the case. They heard oral argument presented by the bank's attorneys regarding why sanctions should be imposed not only on Caghan but also on them personally. The bank pressed the case that sanctions should be imposed based on the assertions by Caghan, Madhiwala, and Upadhyay that they did not know about the Scott County foreclosure proceedings.

At the close of the bank's presentation, the district court asked Madhiwala and Upadhyay whether they wished to add anything to the record. Neither of them defended their conduct or the claim that they had no knowledge of the Scott County foreclosure proceedings. Upadhyay told the court,

24

What our Attorney Paul Caghan asked us to do, I did, just like a doctor. You know, he said, "Take this medicine," so we take that medicine. So we followed his advice. And whatever he suggested that it should go like this, and we did that, Your Honor.

Based on the record, we think that there was not a good faith basis in fact for claiming that Madhiwala and Upadhyay had no knowledge of the foreclosure action. While none of the above eight factors individually, in isolation, would necessarily support such a conclusion, the cumulative effect of the totality of facts and circumstances makes the claim that Madhiwala and Upadhyay did not know about the foreclosure action absurd.

Further, we think Caghan, who was familiar with the underlying litigation, must have known it. He knew of the service on Dane and the attempted service on his clients, he knew that the bank sent copies of its filings in the action to his clients, he had to have been communicating with his clients about the posture of their fraud case, he must have reviewed the discovery in the fraud case and worked with his clients to comply with required disclosure, and he had to have known about Madhiwala's race-to-the-courthouse affidavit.

We can only conclude that Caghan's factual assertion that Madhiwala and Upadhyay had no knowledge of the Scott County foreclosure action was a fiction created to buttress Caghan's effort to avoid summary judgment on the ground that the issues in the fraud case were precluded because of the prior Scott County foreclosure case. We thus find that Caghan violated rule 32:3.1 as found by the commission.

We now turn to the question of whether Caghan violated rule 32:3.1 when he claimed that Madhiwala and Upadhyay were unrepresented when the bank allegedly engaged in fraudulent action beginning on October 8, 2014. Caghan was trying to paint a picture suggesting that the bank took

25

advantage of defenseless borrowers who were abandoned by counsel and fraudulently induced to surrender their property.

For starters, the paper trail does not support Caghan's assertion. Lawyer Dane remained involved in the discussions with the bank well after October 8. The paper trail also indicates that he was communicating with Madhiwala and Upadhyay about matters at least through December 1, 2014. In early December, Dane was attempting to arrange a meeting with his clients and Jaros, the bank's chief lending officer, in an attempt to resolve the dispute. Caghan was clearly aware of Dane's representation between October 8 and November 25 because email traffic between Dane and the bank's attorneys was provided to plaintiffs' experts in the Scott County fraud action. And more importantly, Madhiwala admitted in his deposition that Dane represented RAAJ at least through the beginning of December.

It is not clear exactly when Caghan knew that he could not claim that his clients were unrepresented in discussion with the bank, but certainly by the time of Madhiwala's deposition he knew that he could no longer press that assertion. And yet he continued to defend the claim in the litigation. As a result, Caghan violated rule 32:3.1.

We now turn to the question of whether Caghan is subject to discipline for making an assertion that the bank utilized a phony court order, namely, the executed consent order that was part of the March 27 forbearance agreement. Caghan claimed that the consent order in this case was a phony court order which his clients believed was part of a pending court action and that they had no choice but to abandon the property in October 2014 because of it. But that is not what happened.

The consent order was part of the March 2014 forbearance agreement. There is nothing unusual about it. As a term of the

26

forbearance agreement, the bank wanted a swift remedy in the event of a default under the agreement. The consent order was fairly presented to attorney Dane, who clearly understood its purpose and had no objection to it. Yet Dane made clear that he needed express approval from Madhiwala and Upadhyay before proceeding. He got that approval in late March or early April 2014. The document's origin had absolutely nothing to do with events in October, when the forbearance agreement had expired.

It may be, perhaps, that Madhiwala or Upadhyay had an incomplete understanding of the consent order. That incomplete understanding, however, was not caused by any statement or representation by the bank. The bank handled the documentation of the forbearance agreement and the consent order through lawyer Dane. Caghan had no evidence that someone from the bank made a misrepresentation related to the consent order in October.

In short, there was nothing phony about it. The consent order was a protective device held in reserve by the bank during the life of the forbearance agreement in the event of a default under the forbearance agreement. The forbearance agreement expired on September 27 and so did the consent order, which could be used solely in the event of default under the March 27 forbearance agreement. Caghan violated rule 32:3.1 by asserting that the consent order amounted to a phony court order that was part of a fraudulent scheme in October to oust the defendants from their property.

2. *Iowa Rule of Professional Conduct 32:3.3(a)(1).* The Board further alleges that Caghan violated rule 32:3.3(a)(1). This ethics provision states, "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Iowa R. Prof'l Conduct

27

32:3.3(a)(1).    Rule 32:1.0(f) in turn defines "knowingly" as "actual knowledge of the fact in question.   A person's knowledge may be inferred from circumstances."  *Id.* r. 32:1.0(f).

We considered a claim that an attorney violated this rule in *Iowa Supreme Court Attorney Disciplinary Board v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009) (per curiam).   In this case, an attorney representing two children as coexecutors of an estate filed documents with the district court and tax authorities stating that the deceased did not have a surviving spouse when, in fact, there was a surviving spouse and that spouse was specifically mentioned in the testator's will.  *Id.* at 57, 60.  We found that the conduct violated rule 32:3.3(a)(1).  *Id.* at 60.

We think the evidence here establishes knowing violations of rule 32:3.3(a)(1).  Caghan knew of all the facts and circumstances surrounding the litigation and must have understood that his clients' assertions—that they did not know about the Scott County foreclosure litigation—were not true.  Caghan would have learned in discovery about the Dane paper trail and consequently that Dane did, in fact, continue to represent Upadhyay and Madhiwala until early December.   Further, the phony court order claim packs a punch, but that is part of the problem.  It packed a punch without any factual support.   Caghan had access to the March 27 forbearance agreement and the consent order that was part of that agreement.  Yet he hung onto the phony court order claim in resisting the bank's motion for summary judgment in the Scott County fraud case.

3. *Iowa Rule of Professional Conduct 32:8.4(d).*   Rule 32:8.4(d) provides, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."  Iowa R. Prof'l Conduct 32:8.4(d).  We have said that "there is no typical form of conduct" that violates the rule.  *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v.*

28

*Steffes*, 588 N.W.2d 121, 123 (Iowa 1999).  The attorney's conduct must "hamper[] the efficient and proper operation of the courts."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 121 (Iowa 2015); *see also McGinness,* 844 N.W.2d at 463.  We think Caghan's assertions clearly made the underlying litigation unnecessarily complicated and contributed to a needless expenditure of court resources.  We therefore find a violation of rule 32:8.4(d).

### C. Sanctions.

1. *Authority over out-of-state attorneys appearing in Iowa proceedings.*  As a preliminary matter, we note that this court has authority over out-of-state attorneys who appear in Iowa proceedings pro hac vice.  Iowa Ct. R. 31.14(9)(a); *id.* r. 34.10(1).  In *Iowa Supreme Court Attorney Disciplinary Board v. Carpenter*, 781 N.W.2d 263, 265, 271–72 (Iowa 2010), we enjoined a Minnesota attorney from the practice of law in Iowa for at least two years.  Similarly, in *Iowa Supreme Court Attorney Disciplinary Board v. Mendez*, 855 N.W.2d 156, 160, 175 (Iowa 2014), we entered an injunction against an attorney, prohibiting him from practicing law in Iowa for at least sixty days.

2. *Appropriate sanctions in this case.*  In evaluating sanctions, we consider aggravating and mitigating factors.  We find aggravating factors include Caghan's experience as an attorney and his admitted previous violations related to frivolous proceedings.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 819 (Iowa 2018) ("Years of experience as an attorney can be considered an aggravating factor."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 674 (Iowa 2013) (finding prior discipline to be aggravating factor).  Caghan is not an attorney recently out of law school, and he has simply not learned from his past experiences about the importance of keeping his advocacy within

the bounds of the law. We also believe the fact that the record is devoid of any remorse is an aggravating factor. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire*, 689 N.W.2d 83, 93 (Iowa 2004) (finding aggravating factor in attorney's refusal to take blame for her actions and attempt to shift the blame to others).

In other cases involving similar conduct, we have imposed sanctions ranging from three months to a year. For instance, in *Iowa Supreme Court Attorney Disciplinary Board v. Barry*, 908 N.W.2d 217, 221–22 (Iowa 2018), an attorney failed to file and serve a dissolution decree, misrepresented the status of the proceeding to his client for fourteen months, and ultimately prepared a fraudulent dissolution decree to which he attached a signature page bearing a judge's signature from a different case. The attorney presented the fraudulent decree to his client, after which judicial resources were expended investigating the deception. *Id.* at 226, 234. He also took advantage of a client in a vulnerable position. *Id.* at 234. We held the attorney's conduct violated our rules associated with diligence; keeping clients informed and responding to requests for information; criminal acts, in this case forgery, reflecting adversely on honesty, trustworthiness, or fitness as a lawyer; dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice. *Id.* at 223–27. We suspended his license for one year. *Id.* at 234.

Another case, *Sporer*, 897 N.W.2d at 85, involved an attorney who testified under oath that the signature of an opposing counsel's secretary bound that counsel's client to a settlement agreement. In light of that conduct, we found the attorney knowingly made a false statement of fact or law to a tribunal, and asserted or controverted an issue without a basis in law or fact. *Id.* at 86. The attorney additionally claimed that he annotated a document sent by opposing counsel and provided it to

30

opposing counsel on the same date, which we found to be another instance of a false statement to a tribunal as well as misrepresentation or deceit. *Id.* at 89–90. As a result, his license was suspended for six months. *Id.* at 91.

In *Barnhill*, 885 N.W.2d at 419–20, an attorney argued in a different proceeding that another attorney committed abuse of process by not accepting multiple checks she purportedly sent and by filing a lawsuit against her instead. We found the argument without a plausible factual basis and therefore a violation of our rule against making frivolous claims. *Id.* The attorney also made numerous statements to a tribunal and third parties—including that a payment had been tendered and that she received documents at a date later than revealed by emails—which we found to be knowingly false in violation of our ethical rules against such conduct, as well as being conduct prejudicial to the administration of justice. *Id.* at 420–22. Further, because the attorney knowingly disobeyed a court order compelling discovery responses, we found violations of our ethical rules against knowing disobedience of a court order and failing to comply with an opponent's proper discovery request. *Id.* at 423. We suspended her license for six months. *Id.* at 426.

Other cases have involved lesser sanctions. In *Casey*, 761 N.W.2d at 60, we found the attorney knowingly made false representations to the court misrepresenting the marital status of a decedent. He had an obligation, we said, not to assist his clients in conduct he knew to be fraudulent. *Id.* The attorney also neglected his cases, prematurely withdrew probate fees, failed to comply with the board's investigation, and engaged in conduct prejudicial to the administration of justice. *Id.* at 59–61. As a result, we suspended his license for three months. *Id.* at 62–63. In *Iowa Supreme Court Board of Professional Ethics & Conduct v.*

31

*Hohnbaum*, 554 N.W.2d 550, 552 (Iowa 1996), we also imposed a three-month suspension when an attorney made misleading statements to the court and persisted in a defense position "that was patently frivolous."

Based on all the facts and circumstances of this case, we think an injunction enjoining Caghan from appearing pro hac vice in Iowa courts for at least six months is the appropriate sanction. We find Caghan's conduct less egregious than that in *Barry* but more egregious than that in *Casey* and *Hohnbaum*.

We also agree with the commission that before the injunction is lifted, Caghan must show that the sanctions levied in the case involving the RAAJ parties and the bank have been satisfied. We have no occasion to consider any potential issues surrounding the imposition of the monetary sanctions. No appeal was taken from the district court's sanction order. But we will not allow an enjoined out-of-state attorney to return to practice law in Iowa, even on a pro hac vice basis, when a final order imposing sanctions related to unethical conduct is unsatisfied.

**V. Conclusion.**

For all the above reasons, we enjoin Caghan from the practice of law in this state for a period of at least six months. To appear pro hac vice after that time, Caghan must provide proof that the sanctions award against him in the Scott County fraud action has been satisfied.

**ATTORNEY ORDERED TO CEASE AND DESIST FROM THE PRACTICE OF LAW IN IOWA.**

All justices concur except Waterman, Christensen, and McDonald, JJ., who concur in part and dissent in part.

32

#18–2191, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Caghan*

**WATERMAN**, **Justice (concurring in part and dissenting in part).**

I respectfully dissent from the majority's six-month sanction as too lenient for this Chicago attorney whose own lies and the lies told by his clients at his direction caused considerable harm to the opposing party, his own clients, and our court system. I would extend the injunction to at least one year as recommended by the Iowa Supreme Court Grievance Commission and the Iowa Supreme Court Attorney Disciplinary Board.

The majority correctly concludes that Paul Caghan violated our disciplinary rules prohibiting intentionally false statements to the court, frivolous claims, and conduct prejudicial to the administration of justice. But the majority's otherwise thorough review of the underlying litigation omits salient observations by the district court judge and fails to properly analyze our precedent on sanctions. The majority rests its six-month sanction on several cases involving less egregious attorney misconduct and lacking the harm to the victim and clients present here. I will begin with some choice words by the judge tasked with adjudicating the fraud action Caghan filed.

The district court found the claim by Caghan's clients that they were unaware of the Scott County foreclosure action until November 2016 was "demonstrably untrue." The judge said this about the fake fraud claims Caghan invented and prosecuted:

> [W]ith respect to the so-called "phony court orders," the Court finds these allegations to be completely unsupported and frivolous. The [consent order], signed by Plaintiffs, was a condition of the Forbearance Agreement. Plaintiffs signed the Consent Order in April of 2014, as was required by the Forbearance Agreement. Plaintiffs were represented by counsel at that time. It is, quite frankly, ridiculous for Plaintiffs to come back two and a half years later and allege that they were under the impression that the consent order which they had signed in connection with the Forbearance

33

> Agreement was a "phony court order" that Defendants used to
> trick them into thinking a judge had ordered Plaintiffs to hand
> over the Hotel. This theory of liability on Plaintiffs['] behalf is
> a complete fabrication without a shred of evidence in support
> thereof.

The district court granted the bank's motion for sanctions, finding that the affidavits Caghan's clients filed resisting summary judgment "were made falsely and in bad faith." The court stated,

> Plaintiffs and [their] counsel said what needed to be said
> in order to survive summary judgment without regard for
> whether there was a legitimate basis for these statements.
> Plaintiffs' assertions that [they] had **no** knowledge of the Scott
> County foreclosure action is directly contradicted by the many
> examples of not only communications sent by counsel for
> Defendants, but references to the foreclosure action in
> Plaintiffs' own documents and reports generated by Plaintiffs'
> expert witnesses. The clearest and most obvious smoking gun
> was Madhiwala's 2015 affidavit offered in support of his case
> against Defendants in Cook County, in which he specifically
> references the Scott County foreclosure case. When
> examining these blatant contradictions from an objective
> standpoint, the Court cannot help but conclude that Plaintiffs
> and [Caghan] violated Iowa Rules of Civil Procedure 1.981(7)
> and 1.413(1).

The district court believed the plaintiffs' arguments about the consent order left "the Court no choice but to conclude that the allegations concerning the Consent Order were fabricated in order to sustain the cause of action." Caghan's misconduct is reprehensible and led directly to the court's entry of judgment on its sanction award of $123,359 against Caghan and his clients who the court found "willingly made false representations at Caghan's urging."

We have a monetary measure for the harm Caghan's misconduct caused the opposing party: the $123,359 in attorney fees incurred defending the false claims in court actions in two states. The district court's sanction award in that amount remains unsatisfied, which leaves the victim uncompensated. And because Caghan's clients are jointly and

severally liable for the cost judgment, we also have client harm in that amount to consider in calibrating the disciplinary sanction. Yet the majority fails to discuss this victim harm or client harm in setting its six-month sanction.

The majority relies primarily on the six-month suspension imposed in *Iowa Supreme Court Attorney Disciplinary Board v. Barnhill*, 885 N.W.2d 408, 426 (Iowa 2016), which in turn found a "useful comparator" in the six-month suspension imposed in *Iowa Supreme Court Attorney Disciplinary Board v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014). McGinness lied about serving discovery responses and doubled down on his false story when challenged, resulting in needless court proceedings. *McGinness*, 844 N.W.2d at 466. McGinness had an unblemished disciplinary history and a strong record of community service, and we viewed his misconduct as "an extraordinary one-time occurrence that is out of character for him." *Id.* at 467. During the disciplinary proceedings, McGinness "largely [fell] on his sword" and "unequivocally concede[d] the record support[ed] the ethics violations." *Id.* at 464.

By contrast, Caghan, throughout these disciplinary proceedings, has continued to claim the fraud actions were justified. Caghan has a history of frivolous claims resulting in sanctions of $141,475 imposed by an Ohio court and $38,000 by an Illinois court.

We equated Barnhill's conduct to that of McGinness and warned that if the pattern of frivolous litigation "continues, the sanctions will escalate further . . . including possible revocation." *Barnhill*, 885 N.W.2d at 426. Caghan's pattern of false or frivolous claims in three states justifies escalating his sanction to at least one year. We noted Barnhill's volunteerism and pro bono work and her voluntary cessation of practice in mitigation. *Id.* at 425. No mitigating factors justify leniency for Caghan.

35

The majority also relies on *Iowa Supreme Court Attorney Disciplinary Board v. Sporer*, imposing a six-month suspension on a lawyer who gave false testimony litigating contempt proceedings over a disputed settlement. 897 N.W.2d 69, 90–91 (Iowa 2017). In imposing the six-month suspension, we concluded Sporer's conduct was most analogous to the conduct in *McGinness*. *Id.* We determined that the Board failed to establish that Sporer had engaged in conduct prejudicial to the administration of justice "because the Board has not shown that the hearings associated with the contempt matter would not have occurred but for the ethical violations or that they were materially delayed or extended by Sporer's unfounded testimony." *Id.* at 87. There is no such failure of proof here—Caghan's misconduct resulted in multiple court hearings and two lawsuits that never should have been filed and cost $123,359 to defend.

"We have said '[d]ishonesty, deceit, and misrepresentation by a lawyer are abhorrent concepts to the legal profession, and can give rise to the full spectrum of sanctions, including revocation.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Beek*, 757 N.W.2d 639, 643 (Iowa 2008) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall*, 728 N.W.2d 383, 387 (Iowa 2007)). "Because honesty is crucial to the judicial process and administration of justice, a misrepresentation by a lawyer 'generally results in a lengthy suspension of the license to practice law.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 656 N.W.2d 93, 100 (Iowa 2002) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 643 N.W.2d 652, 656 (Iowa 2001)). We have previously stated,

> Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the

36

> public we serve are damaged when our officers play fast and
> loose with the truth.

*Hohenadel*, 634 N.W.2d at 656 (quoting *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990)).

Our cases provide ample support for at least a one-year suspension for false court filings. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 234–35 (Iowa 2018) (imposing one-year suspension on attorney who repeatedly lied about the status of a dissolution action he never filed and who falsified a dissolution decree and judge's signature); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 238–40 (Iowa 2012) (imposing one-year suspension on an attorney who notarized and filed a forged guilty plea agreement without informing his client beforehand); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 554 (Iowa 2012) (imposing eighteen-month suspension on attorney who knowingly violated a discovery order, neglected client matters, and made misrepresentations to clients and officers of the court); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 381–82 (Iowa 2007) (revoking an attorney's license for fabricating documents, forging signatures, making misrepresentations, neglecting cases, accepting fees prematurely, practicing while suspended, and for otherwise "demonstrat[ing] a blatant disregard for his duty as an attorney to be honest and truthful").

For these reasons, I am unable to join the majority's opinion.

Christensen and McDonald, JJ., join this concurrence in part and dissent in part.